OPINION
{¶ 1} This is an appeal from the domestic relations court's determination of several post-decree motions in a divorce case that concerned issues related to child custody and visitation.
 {¶ 2} The marriage of Pamela Daufel and Roger Daufel (nka *Page 2 
Bardsley) was terminated on July 30, 2003, pursuant to a final judgment and decree of divorce. The parties are the parents of two minor children: Andrew, born on March 23, 1999, and Sabrina, born on February 2, 2001. Pamela[1] was designated residential parent of the minor children. Roger was awarded rights of visitation.
 {¶ 3} Since their divorce, the parties have filed numerous post-decree motions, each charging the other with violations of the court's orders. In her decision ruling on the motions from which this appeal arises, the magistrate observed: "It is unfortunate that Andrew and Sabrina have parents that engage in a contentious battle of post-decree motions and do not place at the forefront what is in the best interest of these young children." We endorse that view, and urge the parties to conform their future conduct to serve the needs of their children rather than their antagonism against each other.
 {¶ 4} The magistrate heard evidence on the most recent array of motions and rendered a decision on them. The parties each filed objections to the magistrate's decision. The trial court overruled the objections and adopted the magistrate's decision. The matter is before us on review of the domestic *Page 3 
relations court's judgment, pursuant to Pamela's notice of appeal.
 {¶ 5} The domestic relations court has full equitable powers and jurisdiction appropriate to the determination of all domestic relations matters. R.C. 3105.011. In granting a decree of divorce, the court is charged to allocate the parental rights and responsibilities for the parties' minor children as are in their best interest. R.C. 3109.04(A), (B)(1). In so doing, the court is charged to consider the factors in R.C. 3109.04(F)(1)(a)-(j). Those factors likewise apply to any modification of a prior decree or order. Id.
 {¶ 6} An appeal to the court of appeals may be taken from an order of the domestic relations court that allocates parental rights and responsibilities. R.C. 3109.07. On most issues, our standard of review with respect to the error assigned on appeal is the abuse of discretion standard. In AAAA Enterprises Inc. v. River Place CommunityRedevelopment (1990), 50 Ohio St.3d 157, 161, the Supreme Court wrote:
 {¶ 7} "`Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable. Huffman v. Hair Surgeon,Inc. (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126, 482 N.E.2d 1248,1252. It is to be expected that most instances of abuse of discretion will result in decisions *Page 4 
that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.
 {¶ 8} "A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result."
FIRST ASSIGNMENT OF ERROR
 {¶ 9} "THE TRIAL COURT ABUSED ITS DISCRETION IN MODIFYING THE SUMMER PARENTING TIME SCHEDULE."
 {¶ 10} The decree of divorce provided that "Roger shall have parenting time for six weeks each summer, but it must be exercised according to the Standard Order of Parenting Time."
 {¶ 11} Mont. Loc. R. 4.34 provides:
 {¶ 12} "Standard Order of Parenting Time.
 {¶ 13} "Unless otherwise agreed to by the parties, or the facts of a case warrant a modification thereof (e.g. long distance or non-traditional work schedules) the court will adopt the Standard Order of Parenting Time for all cases before the court pursuant to R.C. 3109.051(F)(2). All parenting time orders shall contain paragraphs 18, 19, and 20 *Page 5 
of the Standard Order of Parenting Time. [See Appendix, Form 4]"
 {¶ 14} Paragraph 17 of Form 4, referenced in Mont.Loc. R. 4.34 states:
 {¶ 15} "EXTRACURRICULAR ACTIVITIES: Regardless of where the children are living, their continued participation in extracurricular activities, school related or otherwise, should not be interrupted. It shall be the responsibility of the parent with whom the children are residing at the time to discuss the scheduling of such activities with the children and to provide transportation to the activities. Each parent shall provide the other parent with notice of all extracurricular activities, complete with schedules and the name, address and telephone number of the activity leader, if available."
 {¶ 16} Pamela had arranged a complex set of activities for the two children during the summer months. Those activities were in the Dayton area. Roger resides in the Dayton area but works in Wilmington, and he placed the children in daycare there during their summer visitation with him. Pamela wanted Roger to instead leave the children with her own daycare provider while he is at work during their summer visitation, to allow the children to continue their *Page 6 
activities.
 {¶ 17} The magistrate found that, "[g]iven the numerous extracurricular activities the children are involved in and the distance between Roger's daycare provider (in Wilmington) and these activities, it is physically impossible for the children to attend all extracurricular activities." Accordingly, the magistrate decided (1) that "[w]hen the children visit with Roger during the summer, he shall be responsible for providing daycare," and (2) that "[i]f the children are placed in daycare in Wilmington, Ohio where Roger works, they do not have to attend the extracurricular activities in Montgomery County."
 {¶ 18} The domestic relations court overruled Pamela's objection to the magistrate's decision, finding that "[b]ased upon (Roger's) work location and the parties' lack of communication to coordinate the use of (Pamela's) daycare facility, it would be in the children's best interest for the parties to maintain separate daycare for the minor children." With respect to Sabrina's speech therapy sessions, the court noted that the child is with Pamela on most dates when her speech therapy sessions are held.
 {¶ 19} Pamela argues that the court's order violates the provisions of Mont. Loc. R. 4.34 by permitting *Page 7 
interruptions to the extracurricular activities Pamela had arranged. We view the goals of the provision of the Local Rule to be aspirational, not mandatory. Furthermore, the court found that, due to Roger's work schedule, a modification of the provision of its Standard Parenting Time order is warranted, an exception that the local rule expressly permits.
 {¶ 20} Pamela further argues that the best interest of the children will not be served because she believes that the activities she had arranged are more beneficial to the children than the daycare program into which Roger placed them. Pamela also argues that the court's order deprives Sabrina of necessary speech therapy. Those are issues which are within the sound discretion of the trial court to determine. There was evidence of what activities the children will engage in while in daycare, during their stay with Roger. Pamela does not explain how Sabrina will be harmed by missing speech therapy sessions during the weeks she is with Roger. We cannot find that the court abused its discretion when it rejected Pamela's arguments.
 {¶ 21} The first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 22} "THE TRIAL COURT ERRED IN FAILING TO FIND DEFENDANT/APPELLANT IN CONTEMPT FOR TACKING ON SUMMER *Page 8 
PARENTING TIME."
 {¶ 23} Pamela asked the court to find Roger in contempt for "tacking on" his regular parenting time to his five weeks summer parenting time, giving him six weeks instead of five, by using his regular weekend parenting time at the beginning and his regular midweek overnight time at the end of the five week period. The magistrate declined to hold Roger in contempt, finding that "[w]hile this may give Roger extra time in the summer with his children, the magistrate finds that this time given is for the best interest of the children to bond with their father and shall continue."
 {¶ 24} Pamela objected, relying on Mont.Loc. R. 4.34 and, arguing that it distinguishes between Summer visitation and weekend/weekday visitation, so as to require a separation between them. The domestic relations court overruled the objection, finding that the local rule does not specifically address the issue, and therefore a finding of contempt is not warranted. We find no abuse of discretion.
 {¶ 25} The second assignment of error is overruled.
THIRD ASSIGNMENT OF ERROR
 {¶ 26} "THE TRIAL COURT ERRED IN FINDING THAT [PAM] WAS IN CONTEMPT IN STEPPING OFF HER FRONT PORCH DURING A VISITATION EXCHANGE." *Page 9 
 {¶ 27} In a Decision and Judgment of July 26, 2005, (Dkt. 306), which modified its prior parenting time orders, the court further ordered: "Parenting time exchanges shall be at Pamela's door, with the parties discussing the children briefly."
 {¶ 28} On February 5, 2007, when Roger returned the two children to Pamela following exercise of his visitation rights, Pamela stepped off the porch of her home and walked to Roger's car, offering to assist him with their suitcases and Sabrina's 36 inch long "My Size Barbie Doll." The magistrate found Pamela in contempt. The trial court overruled Pamela's objection to the magistrate's decision, stating: "In civil contempt the issue is not whether the party intended to disregard the court's order but that the party failed to obey the court's order. In the instant case, (Pamela) failed to obey an order of this court."
 {¶ 29} R.C. 2705.02(A) provides that a person "guilty of" . . . "[d]isobedience of, or resistance to, a lawful writ, process, order, rule, judgment or command of a court or officer" . . . "may be punished as for a contempt." Unlike criminal contempt, which is punitive, the civil sanction that R.C. 2705.02(A) permits is remedial and coercive, and for the benefit of the complainant in contempt. Pugh v. Pugh (1984), *Page 10 15 Ohio St.3d 176.
 {¶ 30} In a post-divorce proceeding, the evidence must show that the alleged contemnor purposely resisted doing an act which, when done, would effectuate the court's clear intent, as expressed in the decree of divorce. Hughes v. Hughes (1991), 72 Ohio App.3d 286. Thus, where the former husband was awarded the dependency exemption for the parties' minor children, the former wife was properly held in contempt for refusing to sign an IRS form necessary for the former husband to claim the exemptions, even though the decree did not expressly require the wife to sign a form. Id.
 {¶ 31} The record does not portray any injury to his person or interests that Roger suffered as a result of Pamela's conduct, unlike the former husband in Hughes. Roger argues that, nevertheless, Pamela was properly found in contempt because she "cannot follow the Court's orders and does whatever she pleases." Even so, there must be proof that, in doing so, Pamela purposely resisted doing an act which, when done, would effectuate the court's clearly expressed intent.Hughes
 {¶ 32} Pamela may or may not have acted without considering the requirement imposed by the court's order that "[p]arenting time exchanges shall be at Pamela's door . . .," *Page 11 
but that does not clearly and unequivocally express an intent on the court's part that she must remain standing there when the children are returned. As reasonably understood, it requires Roger to bring the children to the portal of Pamela's residence, and for her to receive the children there. Pamela's conduct in walking to Roger's car to assist in carrying the children's belongings did not injure Roger or his interest in any way that required or justified the remedial and coercive sanction of civil contempt the court imposed for Pamela's conduct. Therefore, the court abused its discretion when it found Pamela in contempt.
 {¶ 33} The third assignment of error is sustained.
FOURTH ASSIGNMENT OF ERROR
 {¶ 34} "THE TRIAL COURT INCORRECTLY CALCULATED CHILD SUPPORT BY FAILING TO CONSIDER THE ACTUAL DAYCARE EXPENSES IN ESTABLISHING THE CHILD SUPPORT OBLIGATION."
 {¶ 35} R.C. 3119.022, which for purposes of this case prescribes the "Child Support Computation Worksheet" the court must use when calculating child support obligations, provides (at line 19) for a downward adjustment to the income of the residential parent for annual child care expenses that are work-related, "as approved by the court."
 {¶ 36} Pamela claimed work-related child care expenses *Page 12 
of $25,0000 per year for the parties' two children. The sum represents wages paid to a nanny who provides in-home care. No offset is made for the weeks during the summer months when the children visit with Roger.
 {¶ 37} The magistrate found that the child care expenses Pamela claimed to be "excessive." The magistrate reduced the adjustment to Pamela's income by half, and allowed a further downward adjustment for the weeks the children are with Roger. The total adjustment or deduction the magistrate allowed Pamela is $11,347.07. The trial court agreed that the expenses Pamela claimed are excessive, and it adopted the magistrate's decision.
 {¶ 38} Pamela argues that the trial court abused its discretion because her child care expenses are work-related, and because neither the magistrate nor the court pointed to any evidence showing why they are excessive. We disagree. The magistrate considered the lesser amount that Roger pays for daycare when the children are with him. Furthermore, R.C. 3119.022 (line 19) requires an adjustment only when child care expenses a party claims are "approved by the court." It was Pamela's burden to show how and why the expenses she claimed are reasonable. Pamela argued that the daycare expenses she incurred were necessary to provide stability for the children. *Page 13 
The court acted within its discretion in rejecting that contention.
 {¶ 39} The fourth assignment of error is overruled.
FIFTH ASSIGNMENT OF ERROR
 {¶ 40} "THE TRIAL COURT DID NOT CONSIDER THE BEST INTERESTS OF THE MINOR CHILDREN IN OVERRULING PLAINTIFF/APPELLANT'S MOTION FOR CONTEMPT REGARDING DEFENDANT/APPELLEE'S FAILURE TO FACILITATE COMMUNICATION."
 {¶ 41} The court had ordered the parties to communicate with one another using "Our Family Wizard" computer software. Pamela complained that Roger failed to respond to her messages when the children were with him. The court declined to find Roger in contempt for his failures.
 {¶ 42} Pamela argues that the court abused its discretion, because Mont.Loc. R. 4.34, at paragraph 8 of the Standard Order of Parenting Time, charges each parent to "provide the other parent with destination, times of departure and arrival, and method of travel when taking the children outside the parent's community" during the non-residential parent's summer vacation. However, Pamela does not explain how Roger failed to comply with those assignments, except to argue that "[t]he evidence presented to the Court showed that Roger had no intent of complying with (that requirement) and *Page 14 
provide Pamela with information regarding his summer parenting time travels outside the State of Ohio." (Brief, p. 14). App. R. 16(A)(7) requires appellants to cite to "parts of the record on which appellant relies." Pamela's general contention fails to satisfy that requirement.
 {¶ 43} Pamela further complains that Roger abused her through his computer communications with her, and that he failed to allow Pamela contact with the children when they were with him. However, Pamela fails to explain how that alleged conduct constitutes resistance to the court's prior orders, which is necessary for a finding of contempt. R.C. 2705.02.
 {¶ 44} The fifth assignment of error is overruled.
 Conclusion {¶ 45} Having sustained Plaintiff-Appellant Pamela Daufel's third assignment of error, we will reverse and vacate the domestic relations court's judgment finding her in contempt. As modified, the judgment from which the appeal is taken will be affirmed.
FAIN, J. and WALTERS, J., concur.
[1] For clarity and convenience, the parties are identified by their first names. *Page 1