[Cite as *Szeliga v. Szeliga*, 2012-Ohio-1973.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE   COUNTY

STEPHANIE SZELIGA                       :
                                        :       Appellate Case No. 2011-CA-65
        Plaintiff-Appellant             :
                                        :       Trial Court Case No. 10-DR-262
v.                                      :
                                        :
JONATHAN SZELIGA                        :       (Civil Appeal from Common Pleas
                                        :        Court, Domestic Relations)
        Defendant-Appellee          :
                                        :
               · · · · · · · · · · ·

O P I N I O N

Rendered on the 4th day of May, 2012.

· · · · · · · · · · ·

DON A. LITTLE, Atty. Reg. #0022761, PAMELA L. PINCHOT, Atty Reg. #0071648, 7960
Clyo Road, Centerville, Ohio 45459
        Attorneys for Plaintiff-Appellant

PHILLIP L. BEARD, Atty. Reg. #0023197, 260 North Detroit Street, Xenia, Ohio 45385
        Attorney for Defendant-Appellee

· · · · · · · · · · · ·

FAIN, J.

{¶ 1}     Plaintiff-appellant Stephanie Szeliga appeals from an order of the Greene

County Common Pleas Court, Division of Domestic Relations, relating to parenting and child

support issues. Ms. Szeliga contends that the trial court erred by failing to specifically designate her as legal custodian of the parties' minor child and by failing to specifically order Mr. Szeliga to provide health insurance coverage for the child through his employer. She further contends that the trial court abused its discretion in setting parenting time, by requiring "reasonable" telephone and Skype contact between the child and whichever parent is not currently exercising parenting time, and by deviating downward from the child support guidelines.

{¶ 2}     We conclude that the trial court's order implicitly appoints Ms. Szeliga as the child's legal custodian and requires Mr. Szeliga to include the child on his health insurance policy. We further conclude that the trial court did not abuse its discretion with regard to parenting time, access to the child via telephone or Skype during non-parenting time, or in deviating downward from the child support guidelines. Accordingly the judgment of the trial court is Affirmed.

## I.  The Course of Proceedings

{¶ 3}     Stephanie and Jonathan Szeliga married in Florida in 2008. They separated in early 2009. In August 2009, Ms. Szeliga moved to Greene County, Ohio, where she filed this divorce action. It was determined that Mr. Szeliga had already filed a divorce action in Florida and had obtained service over Ms. Szeliga. The trial court relinquished jurisdiction over the divorce issue to the Florida court, but retained jurisdiction over the issues relating to the parties' minor child. Ms. Szeliga gave birth to the parties' only child on September 17, 2009.

{¶ 4}     The parties were divorced by a decree from the Florida court in 2010. Thereafter, the issues of child custody, parenting time, and child support were litigated in the Greene County Court of Common Pleas, where Ms. Szeliga had originally filed her divorce action.  A hearing was held on September 22, 2011.  Thereafter, on October 17, 2011, the trial court entered an order in which it awarded custody of the child to Ms. Szeliga and granted parenting time to Mr. Szeliga.  The trial court also ordered Mr. Szeliga to pay the sum of $625 per month as child support.

**II.   The Order of the Trial Court Implicitly Named Ms. Szeliga as the Legal Custodian of the Child; the Trial Court Did Not Abuse its Discretion in Allocating Parenting Time; and Any Error in the Trial Court's Ruling with Respect to the Admission of Evidence of Acts of Domestic Violence by One Parent Against the Other Was Not Preserved for Appellate Review**

{¶ 5}     Ms. Szeliga's First Assignment of Error is as follows:

THE TRIAL COURT ERRED IN NOT SPECIFICALLY NAMING THE PLAINTIFF-APPELLANT LEGAL CUSTODIAN OF THE MINOR CHILD, GRANTING PARENTING TIME BETWEEN THE MINOR CHILD AND APPELLEE-DEFENDANT, AND SUSTAINING THE APPELLEE-DEFENDANT'S OBJECTIONS TO EVIDENCE OF DOMESTIC VIOLENCE AND NOT CONSIDERING SAID EVIDENCE WHEN ALLOCATING PARENTAL RIGHTS AND RESPONSIBILITIES.

{¶ 6}     In this assignment of error, Ms. Szeliga contends that the trial court abused its

discretion with regard to custody and parenting time.   Specifically, she contends that the trial court erred by failing to designate her as the legal custodian of the child and by  granting Mr. Szeliga "extensive" parenting time.

{¶ 7}   We begin with the argument that the trial court erred because it failed to specifically designate Ms. Szeliga as the legal custodian of the child.    R.C. 3109.04 states, in pertinent part, as follows:

> `(A) In any divorce, legal separation, or annulment proceeding and in any proceeding pertaining to the allocation of parental rights and responsibilities for the care of a child, upon hearing the testimony of either or both parents and considering any mediation report filed pursuant to section 3109.052 of the Revised Code and in accordance with sections 3127.01 to 3127.53 of the Revised Code, the court shall allocate the parental rights and responsibilities for the care of the minor children of the marriage. Subject to division (D)(2) of this section, the court may allocate the parental rights and responsibilities for the care of the children in either of the following ways:

(1) If neither parent files a pleading or motion in accordance with division (G) of this section, if at least one parent files a pleading or motion under that division but no parent who filed a pleading or motion under that division also files a plan for shared parenting, or if at least one parent files both a pleading or motion and a shared parenting plan under that division but no plan for shared parenting is in the best interest of the children, the court, in a manner consistent with the best interest of the children, shall allocate the parental rights and responsibilities for the care of the children primarily to one of the parents, designate that parent as the residential parent and the legal custodian of the child, and divide between the

parents the other rights and responsibilities for the care of the children, including, but not limited to, the responsibility to provide support for the children and the right of the parent who is not the residential parent to have continuing contact with the children.

\* \* \*

(L) For purposes of the Revised Code:

\* \* \*

(2) A parent who primarily is allocated the parental rights and responsibilities for the care of a child and who is designated as the residential parent and legal custodian of the child under an order that is issued pursuant to this section on or after April 11, 1991, and that does not provide for shared parenting has "custody of the child" and "care, custody, and control of the child" under the order, and is the "residential parent," the "residential parent and legal custodian," or the "custodial parent" of the child under the order.

{¶ 8}    The trial court's order stated that it was in the child's best interest "to name [Ms. Szeliga] as the primary residential parent of the minor child."   The decision did not specifically name Ms. Szeliga, nor anyone else, as the legal custodian of the child.   But the Child Support Worksheet attached to the court's decision did designate Ms. Szeliga as both residential parent and legal custodian.   We further note that neither party sought an order for shared parenting; indeed, Mr. Szeliga specifically testified that he did not seek any form of custody of the child.

{¶ 9}    It is clear that the trial court intended to designate Ms. Szeliga as the residential parent and legal custodian of the child.   It is also clear that Mr. Szeliga was not so named.   We construe the order of the trial court as providing that Ms. Szeliga is the sole legal custodian of the child.

{¶ 10}   We next turn to the claim that the trial court abused its discretion by

permitting Mr. Szeliga to exercise "extensive" parenting time. A review of the trial court's decision reveals that Mr. Szeliga was afforded one week of parenting time during the months of February, April, September, October, and December.[1] Mr. Szeliga is also permitted to exercise a total of twenty-eight days of parenting time during the months of June, July, and August in fourteen day increments. The trial court ordered that the December visitation will follow "the rotation schedule as stated in the Greene County Standard Order of Parenting Time." Finally, the order stated that "both parties will be entitled to reasonable telephone or 'Skype' contact with the minor child when she is in the care of the other parent. Each parent shall cooperate with the other to arrange for this contact. Reasonable is a nonspecific term which the Court hopes the parties will be able to agree upon."

{¶ 11} Ms. Szeliga contends that this visitation is not in the best interest of the child and that the trial court's finding otherwise constitutes an abuse of discretion. Specifically, she claims that Mr. Szeliga's contact with the child had been "limited and sporadic," and that she had been the child's sole caretaker of the child during her lifetime. Ms. Szeliga also claims that it is unreasonable to require a "young child of tender years [to] travel with a father with whom she has had limited contact to the State of Florida for a whole week several times a year." She also contends that Mr. Szeliga has limited time to spend with the child during his visitation time due to the fact that he is employed full time. She also takes issue with the fact that Mr. Szeliga testified that his parents would be able to watch the child while he is at work. Ms. Szeliga claims that the child is unfamiliar with the grandparents, and that Mr. Szeliga's

---

[1] Ms. Szeliga claims that the September visitation is ordered to occur only every other year. This is incorrect. The order provides the September visitation on a yearly basis. However, because the child's birthday falls in September, the order limits Mr. Szeliga's ability to schedule that month's visitation so that the visitation "will not be exercised more than every other year to include her birthday."

mother has back and knee problems that would prevent her from "properly car[ing] for an active two year old." She also contends that the trial court erred by failing to consider evidence of domestic violence "perpetrated by father against mother" when considering visitation. Finally, she contends that the requirement that the parent exercising parenting time with the child provide reasonable telephone or Skype time to the parent who is not with the child is "vague and ambiguous as it does not define what reasonable contact is and such an order would be impossible to enforce."

{¶ 12} The issue of parenting time is a matter entrusted to the discretion of the trial court. Thus, absent an abuse of that discretion, we will not reverse a trial court's decision on parenting time. The term "abuse of discretion" implies that the trial court's decision is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 13} In this case, the trial court found that Mr. Szeliga had been actively involved with the child, who was two years old at the time of the hearing, and that it was in her best interest to continue such contact. The trial court further found that Ms. Szeliga had not demonstrated anything to indicate that the parenting time should be restricted or limited, or that Mr. Szeliga was not capable of caring for the child's needs while she is in his care.

{¶ 14} Further, the trial court ordered Mr. Szeliga to provide funds for an adult to travel with the child to his residence from Ohio. Thus, the claim that the child is too young for this travel lacks merit. The evidence shows that while Mr. Szeliga does have full-time employment, his parents are willing and able to help him with watching the child during work hours. Furthermore, the evidence does not support Ms. Szeliga's claim that the paternal

grandparents are not physically capable of caring for the child. We see no material difference between the fact that Ms. Szeliga has to put the child in daycare when she is taking classes and the fact that Mr. Szeliga will need some form of child care while he is working.

{¶ 15} The direction that the parties permit the party who does not have parenting time to have reasonable access to the child via telephone or Skype is not an unreasonable order, despite the fact that the order relegates the parties, in the first instance, to their own definition of "reasonable" with regard to the amount of access. It is not unreasonable for a trial court to expect that the adult parents of minor children can behave as adults and interpret certain provisions of orders in a reasonable manner, without the necessity of the court dictating the minutiae of every aspect of life. Of course, if disputes arise concerning the reasonableness of the absent parent's access to the child, these disputes can be resolved by the trial court if necessary.

{¶ 16} Finally, we address the claim that Mr. Szeliga had committed an act of domestic violence against Ms. Szeliga when they were living together, before the birth of the child. During cross-examination of Mr. Szeliga, counsel asked him whether he had hit Ms. Szeliga during the course of the marriage. An objection was entered, and the trial court stated that it would allow such evidence if there "was any sort of domestic violence protection orders or charges filed." At that time, Ms. Szeliga's counsel withdrew the question. No objection was made by Ms. Szeliga regarding the trial court's limitation of this testimony, no proffer was made regarding this testimony, and Ms. Szeliga did not testify as to any violence during the marriage. Thus, we find that this issue has not been preserved for appellate review.

{¶ 17} "[T]he weight to be given the evidence and the credibility of the witnesses are

primarily matters for the trier of facts to determine." *In re Guardianship of Smith,* 2d Dist. Clark No. 09CA0069, 2010–Ohio–4528, ¶ 19. An appellate court "has an obligation to presume that the findings of the trier of fact are correct." *State v. Wilson,* 113 Ohio St.3d 382, 2007–Ohio–2202, 865 N.E.2d 1264, ¶ 24. A trial court's judgment will be reversed only if its factual findings are against the manifest weight of the evidence. *KeyBank Natl. Assn. v. Mazer Corp.,* 188 Ohio App.3d 278, 2010–Ohio–1508, 935 N.E.2d 428 (2d Dist.), ¶ 36.

{¶ 18} We find that the trial court's order with regard to the issue of parenting time is not against the manifest weight of the evidence. Therefore, Ms. Szeliga's First Assignment of Error is overruled.

### III.   The Trial Court Did Not Abuse its Discretion

### in Deviating Downward from the Child Support Guidelines.

{¶ 19} The Second Assignment of Error states:

THE TRIAL COURT ABUSED ITS DISCRETION BY DEVIATING DOWNWARD FROM THE OHIO CHILD SUPPORT GUIDELINES.

{¶ 20} As a general rule, Ohio courts use the Ohio Child Support Guidelines to determine the appropriate amount of child support. *Banks v. Banks*, 2d Dist. Montgomery No. 20924, 2005-Ohio-6254, ¶ 11. However, R.C. 3119.22 allows a trial court to order child support deviating from the amount calculated under the basic child support schedule and applicable worksheet if, after considering the factors and criteria set forth in R.C. 3119.23, the court determines the amount calculated " 'would be unjust or inappropriate and would not be in the best interest of the child.' " Id., quoting from *Kosovich v. Kosovich*, 11th Dist. Lake

No. 2004-L-075, 2005-Ohio-4474.

{¶ 21} Pursuant to R.C. 3119.23, when considering whether to deviate from the guidelines, a trial court may consider any of factors enumerated in that statute. The factors include any special and unusual needs of the children; extraordinary obligations relative to other children not of the marriage; other court-ordered payments; extended times of visitation or extraordinary costs associated with visitation; additional employment undertaken to support another family; financial resources and earning ability of the children; disparity in incomes of the parties; benefits conferred by living arrangements of the parties; the amount of taxes to be paid by each parent; significant in-kind contributions from a parent; the financial resources and needs of each parent; the standard of living of each parent and the standard of living the children would have enjoyed but for the separation of the parties; physical and emotional needs of the children; educational needs and opportunities of the children; responsibility of each parent for support of another person; and any other factor the court deems relevant.

{¶ 22} If a trial court concludes that deviation from the guidelines is appropriate, the decision will not be reversed absent an abuse of discretion. *Roberts v. Roberts,* 10th Dist. Franklin No. 08AP–27, 2008–Ohio–6121, ¶ 5.

{¶ 23} In this case, the trial court determined that a deviation from the guidelines was appropriate because of the increased parenting time awarded to Mr. Szeliga, as well as the costs of travel when exercising that visitation. We note that the trial court ordered that Mr. Szeliga maintain responsibility for "all costs of transportation for the minor child," including the cost of transporting any adult traveling with the child. The record supports a finding that, given the distance between the parties, travel by airplane is the best option for transporting the

child. The record further supports a finding that the cost associated with the flight for the child and an accompanying adult (the child is too young to fly alone) is over $1,000 per visit.

{¶ 24} The trial court also noted that a deviation was appropriate because Ms. Szeliga and the child live with Ms. Szeliga's parents and she has no housing expenses. It further appears that Ms. Szeliga has no current intent to change her housing situation. The trial court further noted that Ms. Szeliga, who has returned to school, and currently utilizes a day care facility that requires her to pay for five days of care regardless of the fact that she does not need five full days of care for the child.

{¶ 25} Finally, we note that Ms. Szeliga is voluntarily unemployed at this time and is instead choosing to pursue a new career path. Thus, the trial court could have imputed income to her in determining the amount of child support.

{¶ 26} We conclude that Ms. Szeliga has failed to demonstrate that the trial court abused its discretion in deviating from the child support guidelines and that the record supports the trial court's findings in this regard.

{¶ 27} The Second Assignment of Error is overruled.


**IV.    The Order of the Trial Court Implicitly Orders Mr. Szeliga**

**to Provide Health Insurance Coverage for the Parties' Minor Child**

{¶ 28} For her Third Assignment of Error, Ms. Szeliga asserts the following:

THE TRIAL COURT ERRED BY NOT SPECIFICALLY ORDERING THE

APPELLEE-DEFENDANT TO MAINTAIN PRIVATE HEALTH INSURANCE FOR

THE MINOR CHILD AND FOR NOT ALLOCATING THE OUT OF POCKET

MEDICAL EXPENSES FOR THE MINOR CHILD AMONG THE PARTIES IN CONTRAVENTION OF R.C. 3109.05.

**{¶ 29}** Ms. Szeliga contends that the trial court failed to order Mr. Szeliga to place his child on his policy of health insurance available through his employer.

**{¶ 30}** We agree that the trial court's order does not explicitly order Mr. Szeliga to provide health insurance for the child. However, it is clear from the transcript of the hearing that the trial court informed Mr. Szeliga that he would need to do so. Furthermore, the child support worksheet attached to the trial court's order includes the amount of $6,000 as the cost of providing health insurance coverage to the child. The order also gives the Child Support Enforcement Agency the authority to require Mr. Szeliga to provide coverage for the child if he has coverage available; and the record demonstrates that he has that ability. Finally, Mr. Szeliga does not deny that he is required to pay the cost of adding the child to his policy.

**{¶ 31}** We conclude that the order of the trial court, coupled with the child support worksheet, implicitly requires Mr. Szeliga to include the child on his health insurance coverage, and that he is required to pay for the same. Therefore, we find this assignment of error lacking merit.

**{¶ 32}** The Third Assignment of Error is overruled.


## V.  Conclusion

**{¶ 33}** All of Ms. Szeliga's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

DONOVAN and FROELICH, JJ., concur.


Copies mailed to:

Don A. Little
Pamela L. Pinchot
Phillip L. Beard
Hon. Steven L. Hurley