[Cite as *Qi v. Yang*, 2012-Ohio-5542.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE   COUNTY**

LINING QI                                                :

                                                               :                  Appellate Case No. 2012-CA-24

              Plaintiff-Appellant             :

                                                               :                  Trial Court Case No.   2010-FS-26

v.                                                            :

                                                               :

XIDONG YANG                                       :                  (Civil Appeal from Common Pleas

                                                               :                   Court, Domestic Relations)

              Defendant-Appellee            :

                                                               :

                              · · · · · · · · · · ·

O P I N I O N

Rendered on the 30th day of November, 2012.

· · · · · · · · · · ·

BRIAN A. SOMMERS, Atty. Reg. #0072821, Kirkland & Sommers Co., LPA, 130 West Second Street, Suite 840, Dayton, Ohio 45402
            Attorney for Plaintiff-Appellant

JOYCE M. DEITERING, Atty. Reg. #0005776, Oldham & Deitering, LLC, 8801 North Main Street, Suite 200, Dayton, Ohio 45415-1380
            Attorneys for Defendant-Appellee

· · · · · · · · · · · ·

HALL, J.

{¶ 1}     Lining Qi ("Mother") appeals from the trial court's March 2, 2012 decision

and judgment entry that, among other things, denied a motion by Xidong Yang ("Father") to be designated the primary residential parent of the parties' two children, granted Father liberal parenting time, and ordered Father to pay $832.60 per month in child support.

{¶ 2} Mother advances three assignments of error on appeal. First, she contends the trial court erred in not properly including child-care and medical-care expenses in its child-support calculation. Second, she claims the trial court erred in ordering a downward deviation in Father's child-support obligation. Third, she argues that the trial court erred in finding it in the best interest of the children for Father to have as much parenting time as possible.

{¶ 3} The record reflects that Mother and Father married in China in 1998 and divorced in Virginia in 2008. While married, the parties had two children together: a son, P.Y., who was born in 2000, and a daughter, E.Y., who was born in 2002. The Virginia divorce decree granted Mother and Father "joint legal custody" of the children, while awarding Mother "primary physical custody." The decree awarded Father "liberal and reasonable visitation," including but not limited to the children's summer vacation, spring break, and alternating Thanksgiving and Christmas vacations. The decree further ordered Father to pay $991.00 per month in child support.

{¶ 4} At Mother's request, the trial court registered the Virginia divorce decree and support order on October 28, 2010. (Doc. #5). Both parties then moved to modify the decree in various ways. Specifically, Mother moved for a "review" of Father's existing child-support obligation, his parenting time, the parties' provision of health insurance, and the payment of "uninsured" health-care expenses. (Doc. #14). Father moved for modification of parental

rights, seeking to be named the custodial parent. He also requested modification of his child-support obligation, the dependency tax exemptions, and existing "health care orders." (Doc. #18). Mother responded by moving for modification of the parenting-time schedule and child support. She also moved for an order directing Father to reimburse her for uninsured health-care expenses. (Doc. #26). Finally, Father moved again for modification of his child-support obligation. (Doc. #29).

{¶ 5}     The trial court held a November 3, 2011 hearing on the motions. At the time of the hearing, Mother was residing in Beavercreek, Ohio, with the children, who were nine and eleven years old. Father was residing in Delaware and commuting to work in Pennsylvania, where he sometimes spent the night in a rented room. After hearing testimony from the parties and other witnesses, including a psychologist and a guardian ad litem, the trial court filed a March 2, 2012 decision and judgment entry disposing of the motions. (Doc. #62). The trial court denied Father's motion to be designated the primary residential parent but found that the best interest of the children required giving them "as much contact with and companionship with their father as is possible given the distance between the residences." As a result, the trial court crafted a schedule that granted Father liberal parenting time when the children were not in school. Among other things, the trial court also ordered both parties to keep the children covered on their respective health-insurance plans and ordered Father to pay monthly child support of $832.60 plus fees. The trial court explained that the child-support award was "based upon a deviation of $1,734.87 per year which is equal to the amount the Plaintiff would owe the Defendant for the approximately nine (9) weeks he will have the children during the year." (*Id*. at 2-3). This timely appeal by Mother followed.

{¶ 6}    As a means of analysis, we will address Mother's assignments of error in reverse order. In her third assignment of error, she contends the trial court erred in finding the best interest of the children served by granting Father liberal parenting time. Mother argues that the trial court's ruling ignored evidence to the contrary and constituted an abuse of discretion.

{¶ 7}    Specifically, Mother cites evidence that Father encouraged their son to disrespect women generally, to use vulgar language when referring to her, and to "spy" on her. Mother also notes that Father has a lengthy commute from his Delaware home to his workplace in Pennsylvania and that he sometimes stays overnight in a rented room near his job. Mother stresses that the paternal grandparents, who speak Chinese (as do the children), sometimes watch the children in Delaware while Father is working. In addition, Mother notes that Father failed to disclose to the guardian ad litem that he temporarily had been laid off from his job (although he had been re-hired at the time of the hearing below). Mother cites testimony from a psychologist and the guardian ad litem that Father's denigration of women has caused their son to lack proper respect for women. Mother additionally cites testimony that their son exhibited some depression and sadness after returning from Father's house. Mother argues that limiting Father's parenting time with the children would allow them to perform activities they enjoy in Ohio and would limit their exposure to his "manipulative" and "unhealthy" actions.

{¶ 8}    "The issue of parenting time is a matter entrusted to the discretion of the trial court. Thus, absent an abuse of that discretion, we will not reverse a trial court's decision on parenting time. The term 'abuse of discretion' implies that the trial court's decision is unreasonable, arbitrary or unconscionable." *Szeliga v. Szeliga*, 2d Dist. Greene No.

2011-CA-65, 2012-Ohio-1973, ¶12. We find no abuse of discretion here.

{¶ 9} The trial court granted Father parenting time as follows:

1. For a period of seven (7) weeks in the summer broken into one (1) three (3) week period and one (1) four (4) week period with two (2) weeks in the middle where the children are back with the Plaintiff/mother. * * *

2. The Defendant/father shall have the children reside with him over the traditional Christmas break from school in accordance with the schedule as it is stated in the Court's Standard Order of Parenting Time * * *.

3. The Defendant shall have the children reside with him for the spring break from school in accordance with the Standard Order.

4. The Defendant shall be entitled to have the children with him here in Ohio any time he is able to visit provided he gives the Plaintiff/mother 72 hour notice of his intent to exercise said parenting time. This parenting time shall not interfere with school.

(Doc. #62 at 2).

{¶ 10} On appeal, Mother specifically challenges the trial court's decision to grant Father seven weeks of parenting time in the summer. (See Appellant's brief at 20). Although the record contains evidence to support Mother's factual allegations above, we find her parenting-time argument to be unpersuasive. The primary concerns below were Father's use of derogatory language about Mother, his encouragement of disrespect of women, and his other manipulative actions. These concerns did not compel the trial court to disqualify Father from having extended parenting time with his children.

{¶ 11} Some of the instances of Father using inappropriate language and urging his son to "spy" on Mother involved the use of e-mail. At the time of the hearing, however, the problem had been "handled" because the parties' son no longer had access to e-mail. (Tr. at 33). The record also reflects that their son recently "did very well" after spending four weeks in the summer with Father. (*Id*. at 12). The psychologist who testified acknowledged that the parties' son "very much feels very close to his father and wants to see him[.]" (*Id*.).The guardian ad litem opined that Father "very much loves his children" and described the parties' son as being "very bonded to his dad[.]" (*Id*. at 68-69). The guardian ad litem later added that both children were well bonded with Father and the paternal grandparents, who frequently visit from China. (*Id*. at 90, 94). In fact, both children expressed to the guardian ad litem that, ideally, they would like to divide their time equally between Mother and Father. (*Id*. at 91). Finally, the guardian ad litem agreed that parenting time for both Mother and Father should be "maximized," while expressing optimism that Father's inappropriate behavior would not recur. (*Id*. at 94). In light of the foregoing testimony, it was not unreasonable, arbitrary, or unconscionable for the trial court to grant Father liberal parenting time, including substantial time in the summer. The third assignment of error is overruled.

{¶ 12} In her second assignment of error, Mother claims the trial court erred in ordering a downward deviation in Father's calculated child-support obligation. Specifically, Mother contends the trial court erred in reducing Father's annual child-support obligation by $1,734.87 to account for the time he will have the children during the year.

{¶ 13} The record reflects that the trial court designated Mother as the primary residential parent and legal custodian of the children. It granted Father the parenting time set forth above. Using a child-support computation worksheet, the trial court calculated Father's

annual support obligation as being $10,607.39. It then granted a downward deviation in the amount of $1,734.87 per year, reasoning:

> The Court finds pursuant to the attached child support worksheet that the Defendant should pay the sum of $832.60 plus fees total per month for child support. This amount is based upon a deviation of $1,734.87 per year which is equal to the amount the Plaintiff would owe the Defendant for the approximately nine (9) weeks he will have the children during the year. * * *

(Doc. #62 at 2-3).

**{¶ 14}** "Under R.C. 3119.22, the court may order an amount of child support that deviates from the amount of child support that would otherwise result from the use of the basic child support schedule and the applicable worksheet if the court determines that the actual annual obligation would be unjust or inappropriate and would not be in the child's best interest. In making this determination, the court must consider the factors set forth in R.C. 3119.23." *Owais v. Constandinidis*, 2d Dist. Greene No. 2007 CA 89, 2008-Ohio-1615, ¶41. The trial court's ruling suggests that it relied on one of those factors, to wit: "extended parenting time" by the obligor. R.C. 3119.23(D). "The decision to deviate from the actual annual obligation is discretionary and will not be reversed absent an abuse of discretion." *Owais* at ¶41.

**{¶ 15}** On appeal, Mother argues that the trial court abused its discretion in granting a downward deviation because Father does not have "extended parenting time." She notes that Greene County's standard parenting-time order gives a non-residential parent approximately 2,362 hours of parenting time per year. (Appellant's brief at 16). Father does not dispute this

figure. Mother then contends the trial court awarded Father approximately eight weeks of parenting time—seven weeks in the summer and one week for either Christmas or spring break.[1] This amounted to 1,344 hours of parenting time per year. Because Father received approximately 1,000 hours *less* parenting time than he would have under Greene County's standard parenting-time order, Mother asserts that a deviation based on extended parenting time is unreasonable and constitutes an abuse of discretion in this case.

{¶ 16}   Upon review, we find Mother's opposition to a deviation to be unpersuasive. The phrase "extended parenting time" in R.C. 3119.23(D) is not defined. We see no reason, however, why it must mean only parenting time that exceeds the aggregate number of annual hours granted by a standard order. Parenting time can be "extended" in a second way. In the present case, for example, Father received parenting time with his children for an extended duration in the summer. The trial court awarded him seven weeks divided into separate four-week and three-week segments. We note that Greene County's standard order only grants a non-residential parent four weeks of parenting time over summer vacation. Therefore, the trial court reasonably could have found that Father did have "extended parenting time" beyond what the standard order contemplates. *Cf. Szeliga v. Szeliga*, 2d Dist. Greene No. 2011-CA-65, 2012-Ohio-1973 (affirming a downward deviation in child support based in part on extended parenting time where an out-of-state obligor received nine weeks of parenting time per year). We see no abuse of discretion.

{¶ 17}   Notwithstanding the foregoing conclusion, we find a limited remand necessary

---

[1] The trial court stated that Father had nine weeks of parenting time apparently based on a belief that he would get the children for one week at Christmas and one week over spring break.

for three reasons. First, we are unsure whether the trial court intended for Father to have a total of nine weeks of parenting time per year or whether it actually intended for him to have eight weeks, as the parties appear to believe. In addition to the seven weeks of summer parenting time mentioned above, the trial court awarded Father parenting time over Christmas vacation and spring break in accordance with Greene County's standard order. Mother contends the standard order would result in Father having only eight weeks of parenting time, not nine.

{¶ 18} Second, while the trial court did not abuse its discretion in finding a downward deviation justified, the deviation cannot be based on the entire eight or nine weeks of Father's annual parenting time. This is so because a child-support computation worksheet presupposes a non-residential parent having at least some parenting time. In making its deviation, however, the trial court appears to have taken into consideration all of Father's annual parenting time.

{¶ 19} Third, despite our best efforts, we are unable to determine how the trial court arrived at the figure of $1,734.87 when making its downward deviation. On remand, the trial court should clarify whether it intended for Father to have eight or nine weeks of annual parenting time and include an explanation showing how it arrived at the amount of its deviation.

{¶ 20} Based on the reasoning set forth above, Mother's second assignment of error is overruled insofar as she challenges the trial court's decision to make a downward deviation in Father's child-support obligation. The assignment of error is sustained, however, insofar as it calls into question the amount of the deviation. The cause will be remanded for the trial court to address the foregoing three issues.

{¶ 21} In her final assignment of error, Mother contends the trial court did not properly account for child-care and extraordinary medical expenses when it calculated Father's child-support obligation.

{¶ 22} Mother first argues that the trial court erroneously rejected her claimed child-care expenses on the basis that the expenses were for "after school activities" rather than "day care." Mother insists that she uses various after-school programs as child care because she cannot leave work early enough to care for the children on weekdays. Mother claims she proved that the expenses were reasonable, necessary, and work-related, insofar as her job makes after-school care necessary.

{¶ 23} When calculating child support, a trial court has discretion to determine what amount of child-care expenses should be included on a child-support worksheet. *Johnson v. McConnell*, 2d Dist. Montgomery No. 24115, 2010-Ohio-5900, ¶23. "[A] party is not entitled to automatically have all of the claimed daycare expenses included in the child support calculations and that the court may exercise its discretion in determining the appropriate amount." *Id.* at ¶27. The party seeking credit for the expenses must establish the amount of the expenses, that the expenses were work, job-training, or education related, and that the expenses were reasonable and necessary. *Id.* at ¶37; *see also Daufel v. Daufel*, 2d Dist. Montgomery No. 22584, 2008-Ohio-3868, ¶38.

{¶ 24} Here Mother presented evidence that she pays $400 per month for her son to attend the Asian Arts Center and practice martial arts every Monday through Friday. (Tr. at 173). She did not testify, however, what hours he attends the program. She also pays $95 per month for him to practice his English at the Kumon school every Monday and Thursday from

6:00 p.m. to 7:00 p.m. (*Id*. at 176). Mother testified that her daughter goes to a "gym class" from 2:15 p.m. until 4:30 p.m. three days a week because she cannot leave work that early on those days. (*Id*. at 190-191). Her daughter then participates in gymnastics on those days from 4:30 p.m. until 8:30 p.m. (*Id*.). Mother testified that she pays $214 per month, apparently for some portion of these activities. (Id. at 174, 191). In her brief, Mother also contends she pays $250 per month for her daughter to attend the Asian Arts Center. The cited transcript page does not support this claim, but Plaintiff's Exhibit 9 does support the assertion.

{¶ 25} Based on the record before us, we cannot say the trial court abused its discretion in declining to treat the foregoing costs as child-care expenses when computing Father's support obligation. In its ruling, the trial court indicated that Mother's expenses may have been proper child care if they had been for "a latch key program or something[.]" (Tr. at 202). Although we are unsure, we infer that the trial court may have been suggesting Mother's expenses were unreasonable and excessive insofar as the children's activities were more expensive than traditional latch-key care and lasted later into the evening than her job required. We find nothing unreasonable about this reasoning.[2]

{¶ 26} We turn next to Mother's claim about extraordinary medical expenses. She argues: "The medical expenses were also omitted from the Judge's Order. Despite including the Mother's differential cost of medical care, there is no stipulation that the Father pay 50% of the out-of-pocket medical costs beyond the initial $100.00. This should include all extraordinary medical expenses, including specialist, dental and orthodontic care pursuant to

---

[2] We note too that Mother did not testify about what time she leaves work each day, so we have no way of determining what portion of the children's activities were necessitated by her work.

R.C. 3119.05(F)." (Appellant's brief at 13).

**{¶ 27}** Without more context, we are unsure what Mother means when she refers to "[t]he medical expenses" or precisely what she is arguing on appeal. Notably, the Virginia decree and order that the trial court registered already obligated Father to "pay 50% of any non-reimbursed medical expenses in excess of $250 per calender year." In one of her motions, Mother requested payment of certain "'uninsured' health care expenses." (Doc. #14 at 1). In another motion, she asked "[f]or Father to be directed or ordered to reimburse Mother for health related expenses incurred by Mother on behalf of the parties' two (2) minor children." (Doc. #26 at 1). In support of that motion, Mother filed an affidavit. Therein, Mother averred that she had "presented Father with receipts and requests for reimbursement of health related expenses" that he had refused to pay. (*Id.* at Affidavit ¶3).

**{¶ 28}** To the extent that Mother's argument concerns certain allegedly unreimbursed medical expenses, we find it unpersuasive. Despite the allegations in Mother's motion and affidavit that Father had failed to pay medical expenses for which she had receipts, Mother never addressed the issue during the hearing below. Therefore, we cannot say the trial court erred in omitting the expenses from its order.

**{¶ 29}** Finally, Mother contends the trial court erred in failing to make its modification of child support retroactive to October 2010 when she first requested modification.

**{¶ 30}** The Virginia decree and order that the trial court registered obligated Father to pay child support of $991 per month. In its ruling, the trial court modified Father's child-support obligation by *reducing it* to $832.60 per month. (Doc. #62 at 3). Even

eliminating the trial court's downward deviation of $1,734.87 per year would only increase Father's monthly child-support obligation by about $144.57 per month, resulting in a new monthly obligation of approximately $977.17. This figure is still smaller than the $991 per month Mother received under the Virginia decree. Therefore, we fail to see how she could have been prejudiced by the trial court neglecting to make its support modification retroactive. Mother benefitted the longer the trial court waited to reduce her monthly child-support award. The final assignment of error is overruled.

{¶ 31} Having sustained a portion of Mother's second assignment of error, we affirm the trial court's judgment in part, reverse it in part, and remand the cause for further proceedings. Specifically, the trial court's judgment is reversed to the extent that it made a downward deviation in Father's child-support obligation in the amount of $1,734.87 without providing sufficient details for us to determine how the deviation was calculated. As explained in our analysis of Mother's second assignment of error, the cause is remanded for the trial court to clarify whether it intended for Father to have eight or nine weeks of annual parenting time and include calculations showing how it arrived at the amount of its deviation.

. . . . . . . . . . . . .

DONOVAN, J., concurs.

GRADY, P.J., concurring:

{¶ 32} R.C. 3119.22 authorizes the court to order an amount of child support which deviates from that which would otherwise result from use of the basic child support schedule and the applicable worksheet if, upon considering the criteria in R.C. 3119.23, the court determines that the amount that would otherwise result "would be unjust or inappropriate, and

would not be in the best interest of the child."

{¶ 33} R.C. 3119.23(D) authorizes a deviation in consideration of "[e]xtended parenting time or extraordinary costs associated with parenting time." The Child Support Computation Worksheet for Sole Residential Parents or Shared Parenting, R.C. 3119.022, states, at line 27(a), that for any deviation ordered "(Specific facts and monetary value must be stated.)"

{¶ 34} The Child Support Computation Worksheet in the present case orders a credit of $1,734.87 in the father's child-support obligation. The court's order and decision states: "The court finds pursuant to the attached child support computation worksheet that Defendant should pay the sum of $832.60 plus fees (sic) total per month for child support. This amount is based upon a deviation of $1,734.87 per year which is equal to the amount the Plaintiff would owe Defendant for the approximately nine (9) weeks per year he will have the children during the year."

{¶ 35} R.C. 3109.04(A)(1) provides that, absent a request for shared parenting, "the court, in a manner consistent with the best interest of the children, shall allocate the parental rights and responsibilities for the care of the children primarily to one of the parents, designate that parent as the residential parent and legal custodian of the child, and divide between the parents the other rights and responsibilities for the care of the children, including, but not limited to, the responsibility to provide support for the children and the right of the parent who is not the residential parent to have continuing contact with the children." That allocation imposes financial obligations on the residential parent for the child's care, irrespective of whether the child is or is not with the residential parent each and every day. The amount of

support the Basic Child Support Schedule prescribes assumes that the residential parent will bear those costs even while the child visits with the non-residential parent.

{¶ 36} The monetary value of the deviation the domestic relations court ordered instead assumes that the residential parent will have no financial obligations for the child's care during the approximately nine weeks the child visits with the other parent, for no reason other than the fact that the child is not then with the residential parent. That the nine weeks may be "extended parenting time" is not a "specific fact" which justifies the "monetary value" of the deviation the court ordered. R.C. 3119.022.

{¶ 37} One of the "extraordinary costs associated with parenting time" for which R.C. 3119.23(D) authorizes a deviation might reasonably include costs of transportation for long-distance travel that a visitation order imposes. Likewise, "extended parenting time" might impose costs on the non-residential parent, such as day care, which he or she would not otherwise have to bear. In either event, in order to grant a deviation the court is required by R.C. 3119.022, at line 27(a), to identify the specific facts and the costs associated with the burdens those facts involve which justify a deviation. Merely reciting the categorical basis for a deviation in R.C. 3119.23(D), as the court did in the present case, is insufficient.

{¶ 38} I would reverse and remand for specific findings to support any deviation.

. . . . . . . . . . . .

Copies mailed to:

Brian A. Sommers
Joyce M. Deitering
Hon. Steven L. Hurley