**REIK, f.k.a. Bowden, Appellant,**

v.

**BOWDEN, Appellee.**

[Cite as *Reik v. Bowden,* 172 Ohio App.3d 12, 2007-Ohio-2533.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–060531.

Decided May 25, 2007.

14

Barbara J. Howard Co., L.P.A., Barbara J. Howard, and William Scott Russell, for appellant.

Croswell & Adams Co., L.P.A., Gregory L. Adams, and Julia A Sears, for appellee.

DINKELACKER, Judge.

{¶ 1} The parties in this case were married in 1986. By the time that their marriage was terminated in February 2003, the couple had five children. Plaintiff-appellant Amy L. Reik, who was initially acting pro se in the trial court, was named the residential parent and legal custodian, and defendant-appellee James G. Bowden IV agreed to pay child support in the amount of $10,200 per month and spousal support for ten years in the amount of $5,000 per month. At the time of the termination of the couple's marriage, Bowden was the General Manager for the Cincinnati Reds baseball team and earned $626,000 per year. Reik had no income. On the child-support worksheet that was attached to the decree, the amount on line 17 for basic combined support was $128,875, and line 26 indicated no deviation. The decree did not discuss why the child-support order was set at that amount. The decree did indicate that spousal support could not be modified within the first five years "due solely to remarriage or cohabitation on the part of [Reik]." No such limitation was attached to child support.

{¶ 2} In December 2003, Bowden filed a motion to terminate and modify child support and spousal support because he had been fired by the Cincinnati Reds. At this point, Reik was represented by counsel. In February 2004, the parties

entered into an agreement. The agreed entry signed by Reik, counsel for both parties, the magistrate, and the trial court stated that "[a]ll payments of child support and spousal support shall be suspended effective January 1, 2004 due to Father's current unemployment. All matters concerning child support and spousal support * * * from and after January 1, 2004, * * * shall be subject to future decision."

{¶ 3} A year later, Bowden had obtained employment as a general manager for another major-league baseball team. Reik filed a motion to set aside the agreed entry, claiming that Bowden had been receiving income that he had not disclosed at the time the agreed entry was signed. This motion, as well as others not relevant to this appeal, was set for a hearing before the magistrate. The record also indicates that the "issue of modification of support was tried by the implied consent of the parties." The hearing was conducted over four days.

{¶ 4} The magistrate issued a decision finding that Bowden's income had increased from $626,000 to $650,000. The magistrate found that Reik had remarried "a man of substantial means." Her standard of living, as well as that of the children, had "improved over that standard of living they enjoyed while she was married to [Bowden]." The new husband provided the children with health-insurance coverage. The magistrate set child support pursuant to R.C. 3119.04(B) at the amount listed under the basic child-support schedule for a combined income of $150,000. On the child-support worksheet, the amount on line 17 for basic combined support was $28,534. After considering the factors listed in R.C. 3119.23, the magistrate found no reason to deviate from that figure. This resulted in a decrease in child support from $10,200 per month to $2,168. The magistrate did award Reik $20,000 in attorney fees.

{¶ 5} Both parties filed objections to the decision of the magistrate. The trial court found that the magistrate's determination on the amount of child support was proper. The court noted that the magistrate had properly considered the benefit that Reik had received from her remarriage when deciding not to deviate from the base award.[1] The trial court found the amount of support to be "just and appropriate and in the best interests of the minor children."

{¶ 6} The trial court modified the decision of the magistrate, making the effective date of the new order December 1, 2004, which it found to be the first month of Bowden's full employment. The trial court also adjusted the arrearage to account for the emancipation of the eldest child. Finally, the trial court reduced the award of attorney fees to $5,000, finding that Reik was unsuccessful in the majority of her case.

---

1. See R.C. 3119.23(H).

{¶ 7} Reik now raises five assignments of error on appeal. Since the first three address the propriety of modifying the child-support order, they are addressed together.

{¶ 8} A trial court's modification of a prior child-support order is within its broad discretion and will not be disturbed absent an abuse of discretion.[2] An abuse of discretion is more than an error of law or judgment. It implies that the court's attitude was unreasonable, arbitrary, or unconscionable.[3] A decision that is unreasonable is one that has no sound reasoning process to support it.[4]

### Suspension versus Modification

{¶ 9} We must first decide what effect the February 2004 agreed entry had on the decree as it related to child support. Bowden asserts that it was a modification of the order. Therefore, he contends that the new order should be compared to a zero order. We disagree.

{¶ 10} Bowden argues that the suspension in this case "altered, changed, and reduced the child support *order* contained in the Decree." (Emphasis added.) It did not. The agreed entry stated that "payments" of spousal and child support were "suspended."

{¶ 11} In a case that was not cited by either party, this court addressed the issue of how a suspension is to be considered.[5] In that case, this court held that a suspension of a child-support order was "essentially a modification." In fact, this court called it "a modification of the severest form."

{¶ 12} However, neither that decision nor the cases that it cited addressed the interpretation of language used by parties in an agreed entry. It is well settled that agreements resolving issues incident to divorce are contracts subject to the same rules of construction applicable to other contracts.[6] When construing such an agreement, a court should resolve any ambiguity by considering not only the intent of the parties but the equities involved.[7]

---

2. *Woloch v. Foster* (1994), 98 Ohio App.3d 806, 810, 649 N.E.2d 918.

3. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

4. *Wolfe v. Wolfe*, 10th Dist. No. 04AP–409, 2005-Ohio-2331, 2005 WL 1118198, ¶ 7.

5. *Walker v. Amos* (2000), 140 Ohio App.3d 32, 746 N.E.2d 642.

6. *Herold v. Herold*, 12th Dist. No. CA2004–07–179, 2005-Ohio-4441, 2005 WL 2059369, citing *Brown v. Brown* (1993), 90 Ohio App.3d 781, 784, 630 N.E.2d 763.

7. Id. citing *In re Dissolution of Marriage of Seders* (1987), 42 Ohio App.3d 155, 156, 536 N.E.2d 1190.

{¶ 13} Black's Law Dictionary defines "suspend" as "[t]o interrupt; to cause to cease for a time, to postpone; to stay, delay or hinder; to discontinue temporarily, but with an expectation or purpose of resumption."[8]  There is nothing in the agreed entry in this case indicating that it was altering the underlying *obligation* in any way, and nowhere did Reik agree to waive her entitlement to the specified payments.  While that may have been Bowden's wish when he filed his motion, he abandoned that wish when he agreed simply to suspend the payments.

{¶ 14} In this case, it would be fundamentally unfair to construe the agreement as a modification of the support orders.  Bowden also argues that the trial court lacked jurisdiction to extend the spousal support beyond the ten-year period in the decree.  If he is correct in both his arguments, Reik would not be entitled to collect the funds owed for the 11 months of the suspension because the order had been modified, and she would also not be able to extend the period of support 11 months because the trial court lacked jurisdiction to do so.

{¶ 15} Based upon the foregoing, we hold that since these parties chose language in an agreed entry that "payments" of support would be "suspended" and further chose not to incorporate language that addressed the status of the underlying obligation, the agreement was not a modification of the underlying support order.

### A Change of Circumstances Occurred

{¶ 16} Having determined that the agreed entry was not a modification of the underlying child-support obligation, we must next determine whether there was a change in circumstances such that a modification of the child-support order was appropriate.  Because the February 2004 agreed entry did not change the substance of the order, we compare the calculations made below with the original decree and conclude that a change of circumstances had occurred.

{¶ 17} This court recently addressed the issue of finding a change of circumstances.[9]  R.C. 3119.79(A) requires the court to recalculate the amount of support by using the parties' new financial information "through the line establishing the actual annual obligation," which is line 23a on the child-support worksheet.  Then the statute states that the court must determine if the amount on line 23a is more than 10 percent more or less "than the amount of child support required to be paid pursuant to the existing child support order," which would be set forth on line 25 of the original child-support worksheet.

---

8.  Black's Law Dictionary (6th Ed.1990) 1446.

9.  *Sapinsley v. Sapinsley,* 171 Ohio App.3d 74, 2007-Ohio-1320, 869 N.E.2d 702.

{¶ 18} In this case, the trial court found that the joint income of the two parties was $660,000. Pursuant to R.C. 3119.04(B), it found that the basic combined child-support obligation was $28,534. Considering that Bowden's share was 89.4 percent, the trial court found that the actual annual obligation at line 23a was $25,508. Since there was more than a 10 percent difference between that figure and the amount of the original $128,875 order, there was a change of circumstances as a matter of law.

{¶ 19} The crux of Reik's argument is that the trial court should not have used $28,534 as the basic combined child-support obligation, when Bowden's income was over four times the $150,000 guideline maximum. While we sympathize with her position, we can find no abuse of discretion.

{¶ 20} In essence, Reik is arguing that the trial court should have used the guideline maximum to calculate a percentage that should have then been applied to Bowden's income. In fact, that is what the parties did when they set the order in the decree. The worksheet attached to the decree listed a combined income of $625,000. For five children, the basic child-support schedule lists support in the amount of $30,931 on income of $150,000. This places the support order as 20.62077 percent of income. The agreed amount of support in this case, $128,875, was exactly 20.62077 percent of $625,000.

{¶ 21} Until March 2001, this was the required method of computing support under R.C. 3113.215.[10] While there are courts that have held that it is not an abuse of discretion to continue to use this method when setting support,[11] there are none that have held that it is an abuse of discretion not to. In fact, courts have repeatedly said that the statute does not require any explanation of a support decision unless the court awards less than the amount awarded for combined incomes of $150,000.[12]

{¶ 22} Under R.C. 3119.04, the only factors that the trial court is required to consider when setting support above that amount are (1) the needs and the standard of living of the children who are the subject of the order and (2) the needs and the standard of living of the parents.[13]

{¶ 23} Reik has cited only one case that found an abuse of discretion in using the $150,000 benchmark where the actual income of the parties was much

---

10. See *Cyr v. Cyr*, 8th Dist. No. 84255, 2005-Ohio-504, 2005 WL 315375, ¶ 53–54.

11. See, e.g., *Bunkers v. Bunkers*, 6th Dist. No. WD–06–030, 2007-Ohio-561, 2007 WL 431418, ¶ 21, quoting *Kendall v. Kendall*, 6th Dist. No. OT–04–004, 2005-Ohio-1777, 2005 WL 859447, ¶ 25.

12. See, e.g., *Pruitt v. Pruitt*, 8th Dist. No. 8435, 2005-Ohio-4424, 2005 WL 2046422, ¶ 44.

13. R.C. 3119.04(B).

higher.[14] However, in that case the court found that the problem was not that the trial court had not deviated upward, but rather that there was nothing in the record to indicate that the court had considered the needs and standard of living of the children and the parents.[15]

{¶ 24} In this case, the trial court concluded that the standard of living of Reik and the children had improved since the time of her second marriage. That finding was amply supported by the record. Since the trial court considered the only criteria it was required to consider under the statute, it was not an abuse of discretion to use the $150,000 benchmark when computing the basic combined child-support obligation at line 17 of the worksheet. Under these circumstances, the figure at line 23a was correct. When that figure is compared to the previous order, there was a difference of more than 10 percent. Pursuant to *Sapinsley*, a change of circumstances occurred as a matter of law.

### Agreed "Deviation" and R.C. 3119.04

{¶ 25} Reik argues that a finding of a 10 percent change was not enough. She contends that the parties deviated by agreement and that the trial court had to find a change in circumstance that was not contemplated by the parties at the time the agreement was reached.[16] In this case, we disagree because the original order was not a "deviation."

{¶ 26} While R.C. 3119.04 requires findings if the support order is below the base amount, it does not require any explanation if it is not.[17] In fact, the trial court is free to determine any amount above the guideline maximum without providing any reasons at all.[18] Since there is no requirement to make findings to support an order above the base amount pursuant to R.C. 3119.04(B), setting a support order above that amount is not a "deviation" from the basic child-support schedule. The cases cited by Reik addressed agreements to deviate from a presumptively correct order. We find them inapplicable to this case.

{¶ 27} Even if the cases cited by Reik applied here, the result would not be different. In those cases, the parties agreed to deviate from the statutory

---

14. *Gregory v. Kottman–Gregory*, 12th Dist. No. CA2004–11–039, 2005-Ohio-6558.

15. Id. at ¶ 44; accord *Longo v. Longo*, 11th Dist. No. 2004–G–2556, 2005-Ohio-2069, 2005 WL 1007248, ¶ 66.

16. See, e.g., *Bonner v. Bonner*, 3rd Dist. No. 14–05–26, 2005-Ohio-6173, 2005 WL 3111940; *Le v. Bird*, 12th Dist. No. CA2005–04–090, 2006-Ohio-204, 2006 WL 156834.

17. *Guertin v. Guertin*, 10th Dist. No. 06AP1101, 2007-Ohio-2008, 2007 WL 1219478, ¶ 11; *Cyr v. Cyr*, 8th Dist. No. 84255, 2005-Ohio-504, ¶ 56.

18. *Pruitt v. Pruitt*, 8th Dist. No. 84335, 2005-Ohio-4424, 2005 WL 2046422, ¶ 43.

amount, and the order explained the terms of their agreement.[19]   Such agreed orders function like any other contract.[20]   When parties voluntarily agree to limit the circumstances under which they will seek to modify a support order, they remain bound by the terms that they set forth in their agreement and cannot modify the order even if they can make a showing of a 10 percent change.[21]   For example, if party agrees not to seek modification unless either there is a change in custody or he becomes disabled, he is bound by that agreement.[22]

{¶ 28} In this case, the decree set forth the agreed amounts for child support and spousal support.   In the section that discussed the spousal support, the parties agreed that the amount could not be modified for the first five years "due solely to the remarriage or cohabitation" of Reik. This limitation was not included in the paragraph that set child support.   While Reik correctly notes that her remarriage was contemplated at the time of the agreement, it was not factored into the child-support agreement.

{¶ 29} Reik notes that she was the one who insisted on including this language in the decree and that "Bowden *chose* to enter into the decree."   However, Reik apparently did not insist that the language likewise limit child-support modification.   Since the language was expressly included in one section of the agreement, we presume it was excluded from other parts by design.

{¶ 30} For the foregoing reasons, we hold that the trial court properly found that a change of circumstances had occurred.   We also hold that the fact that the parties agreed to an amount of child support in the original decree did not change this result.   While the parties contemplated the possibility of Reik's remarriage, they chose not to make this a factor in child-support modification.   Reik's first three assignments of error are overruled.

### Spousal–Support Duration Must Be Addressed

{¶ 31} In her fifth assignment of error, Reik argues that the trial court abused its discretion when it failed to address the issue of whether the suspension of spousal support served to extend its duration.   Bowden argues that the trial court had no jurisdiction to extend the period of spousal support because the decree did not retain such jurisdiction.   He is correct, to a point.

---

19.   *Bonner* at ¶ 4;  *Le* at ¶ 2.

20.   *Le* at ¶ 11, citing *In re Dunn* (1995), 101 Ohio App.3d 1, 10, 654 N.E.2d 1303.

21.   *Le* at ¶ 12;  *Bonner* at ¶ 14–15.

22.   *Le* at ¶ 10.

{¶ 32} The decree expressly provided that the trial court "may not modify the ten-year duration." However, we have determined that the "suspension" of payments pursuant to the agreed entry did not change the order. Since Reik did not waive the amount that would have been payable during the period of suspension, there was nothing preventing the trial court from ordering Bowden to pay that money after the suspension was lifted.

### Attorney–Fee Award Was Proper

{¶ 33} In Reik's fourth assignment of error, she claims that it was improper for the trial court to reduce the amount of attorney fees awarded by the magistrate. She claims that "[t]he only possible explanation is the Trial Court's reliance on Ms. Reik's assets." We disagree. The trial court expressed its reason for reducing the award of attorney fees—Reik "was unsuccessful on the majority of her case." This determination was not an abuse of discretion.

### Conclusion

{¶ 34} Accordingly, we overrule Reik's first, second, third, and fourth assignments of error. We sustain her fifth assignment of error, reverse the trial court's judgment in part, and remand this cause for further consideration of the issue of the duration of spousal support consistent with this opinion.

Judgment accordingly.

HILDEBRANDT, P.J., and SUNDERMANN, J., concur.