[Cite as *Mossing-Landers v. Landers*, 2016-Ohio-7625.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| NATALEE MOSSING-LANDERS | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 27031 |
| | : | |
| v. | : | Trial Court Case No. 14LS3 |
| | : | |
| MICHAEL D. LANDERS | : | (Appeal from Domestic Relations |
| | : | Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 4th day of November, 2016.

. . . . . . . . . . .

DAVID P. MESAROS, Atty. Reg. No. 0012725, ADAM R. MESAROS, Atty. Reg. No. 0089828, 7051 Clyo Road, Centerville, Ohio 45459
　　　Attorneys for Plaintiff-Appellee

MICHAEL D. LANDERS, 6359 West Behrend Dr., Glendale, Arizona 85308
　　　Defendant-Appellant-Pro Se

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-Appellant, Michael Landers, appeals, pro se, from a judgment granting the objections of Plaintiff-Appellee, Natalee Mossing-Landers, to a magistrate's decision that reduced Michael's child support.[1] In support of his appeal, Michael contends that the trial court erred by ignoring the magistrate's conclusion that $1,534.32 in veteran's disability benefits should not be included as income for purposes of calculating child support. Michael further contends that the court erred in including more than $9,000 claimed as childcare expenses in the child support calculations because Natalee only provided receipts in the amounts of $2,720 and $687 through mid-September 2015.

{¶ 2} We conclude that the trial court did not err in connection with the issue of whether Michael's veteran's disability benefits should be included in income for purposes of calculating child support. Michael failed to present evidence that these benefits fit the statutory exclusion in R.C. 3119.01(C)(7)(b). However, the trial court never ruled on the issue because the court concluded that Michael's income was essentially unchanged. The court did not abuse its discretion in this regard. In contrast, the court did abuse its discretion by including $9,020 in childcare expenses on the child support worksheet, as the evidence presented at the hearing failed to support that amount. Accordingly, the judgment of the trial court will be affirmed in part, reversed in part, and remanded for further proceedings.

I. Facts and Course of Proceedings

---

[1] For purposes of convenience, we will refer to the parties by their first names.

{¶ 3} In January 2014, Natalee filed a complaint for legal separation, which was ultimately amended to a complaint for divorce in October 2014. During the proceedings, Michael at times was represented by counsel, and also represented himself.

{¶ 4} Prior to the time the action was filed, Michael had retired from the United States Air Force ("USAF"), and was receiving a pension. In addition, Michael received a veteran's disability pension. Around the time the complaint was filed in January 2014, Michael was also earning more than $100,000 in income from other employment. However, during the litigation, Michael decided to become a golf pro. As a result, he went to Chandler, Arizona, in the winter of 2015 to attend school and pursue a golf management career.

{¶ 5} The trial for the divorce was set for March 27, 2015, and Michael was represented by counsel at the time. The record does not reflect what occurred at the hearing, and no transcript of the hearing has been filed. According to Natalee's testimony at the support modification hearing, there was a dispute about the number to use for Michael's income and the judge decided to assign a figure of $85,000.

{¶ 6} According to the amended pretrial statement that Michael filed on March 26, 2015, his yearly income at the time from employment was $14,560, based on two part-time golf internships in Arizona that paid about $8.00 per hour. However, Natalee's testimony at the modification hearing was that Michael's income at the time of the decree was about $20,000. In addition, Michael's pretrial statement listed a retirement pension of $3,094 per month and USAF disability benefits of $1,509.51 per month.

{¶ 7} On May 5, 2015, the trial court filed a motion and entry for contempt based on the attorneys' failure to file the final judgment and decree of divorce. According to

Natalee, there was a dispute between March and June about daycare expense. Consequently, in preparing the divorce decree, Natalee and her attorney used what had been previously read into the record, which was $9,000. September 22, 2015 Transcript of Proceedings, p. 16.[2]

{¶ 8} On May 26, 2015, the trial court granted the motion of Michael's counsel to withdraw. Michael's counsel indicated that there had been differing opinions and courses of strategy about how to proceed. In addition, Michel had said he no longer wished his attorney to represent him.

{¶ 9} The final judgment and decree of divorce was filed on June 1, 2015. At the support modification hearing, Natalee indicated that Michael would not either sign the divorce decree or cooperate in finalizing it. The decree as filed stated that if private health insurance were provided, Michael would pay monthly child support of $770 per child, for a total of $1,540, plus 2% poundage, for a total of $1,570.80. In the child support worksheet that was attached, Michael's income was listed as $85,000 and Natalee's income was listed as $50,000. The amount of $9,020 in childcare expenses was credited to Natalee, and a percentage of that amount, consistent with Michael's share of the parties' combined income, was added to Michael's annual support obligation.

{¶ 10} Spousal support was not ordered, but Natalee was granted 24% of Michael's disposable military retirement pay. Michael was required to transfer this amount to Natalee within three days of receipt each month. This was based on the fact that Natalee had not been married to Michael long enough for the military to make direct

---

[2] The final divorce decree appears to have been prepared by Natalee's counsel, and was "read but not approved" by Michael's counsel.

payment to Natalee.

{¶ 11} No appeal was taken from the final judgment and decree.[3] About two weeks after the decree was filed, Michael filed a pro se motion for change of child support, and a change of parenting time. In the motion, Michael alleged that a change of circumstances had occurred, as he had moved back to Dayton, Ohio, from Arizona, and was working two part-time jobs. He contended that the child support payments were a hardship, and asked the court to reduce his support obligation to $500 per month per child. He also asked that the amount of non-insured health care expenses be reduced to $50 per month per child.

{¶ 12} On September 22, 2015, the magistrate held a hearing, at which both Michael and Natalee testified. During the hearing, Michael indicated that he was working about 27 to 32 hours weekly at Yankee Trace Golf Club, at a pay rate of $9.10 per hour, and at Dick's Sporting Goods for 13 to 15 hours weekly, at a pay rate of $9.00 per hour. He also stated that his gross (not net) retirement pay was $3,443 per month, and his 60% veteran's disability pension was $1,534.32. Natalee testified to the facts as indicated above, and further stated that she was still currently incurring about $9,000 in childcare expense for the children.

---

[3] Michael did file a motion for relief from judgment on December 18, 2015. The docket indicates that the trial court did not rule on this motion before Michael's notice of appeal was filed, and the court would have been divested of jurisdiction to do so while the appeal was pending. Upon resolution of the appeal, the trial court would have jurisdiction to hear and rule on the Civ.R. 60(B) motion. *Puls v. Puls*, 2d Dist. Montgomery No. 21029, 2005-Ohio-6839, ¶ 20. *See also Crump v. Batie*, 2d Dist. Clark No. 2012-CA-69, 2013-Ohio-2345, ¶ 16-17, and *Wells Fargo Fin. Ohio 1 Mtge. Group v. Lieb*, 2d Dist. Montgomery No. 23855, 2010-Ohio-6111, ¶ 10 (both noting that trial court decisions ruling on Civ.R. 60(B) motions where appeals are pending, without remands by the appellate court, are "null and void.")

**{¶ 13}** The testimony and exhibits concerning childcare expenses were contradictory. Although Natalee claimed $9,000 in annual expenses, she only provided the trial court with childcare receipts for August 2015 of $582.50 from Centerville Safe Care, Inc., and listed expenses (not receipts) of $2,720 paid to an individual to care for the children at her home in July and August. Michael submitted a letter from Centerville Safe Care dated September 16, 2015, in which this provider stated that the total amount spent for childcare during 2015 was $687.50. Natalee also testified that the only childcare providers were: (1) the person who came to her house in the summer of 2015; and (2) Centerville Safe Care.

**{¶ 14}** In addition, the magistrate heard testimony about an increase in parenting time, as the prior order granted only about 4 days per month, due to Michael's residence in Arizona. However, he had since moved back to Ohio.

**{¶ 15}** After hearing the testimony, the magistrate granted Michael's motion for more parenting time, and allowed him time pursuant to the court's standard order. The magistrate also reduced Michael's child support to $463 per month per child, based on an income figure on the child support worksheet for Michael of $22,748. In addition, the magistrate attributed $50,000 in income to Natalee, and credited her with $3,752 in daycare costs. This latter amount was based on the $2,720 shown for the summer in Ex. 1, and $1032 for the year, as an extrapolation from the amounts the parties provided for childcare for the year to Centerville Safe Care.

**{¶ 16}** Natalee filed objections to the magistrate's decision and then filed supplemental objections after the transcript of the hearing had been filed. On January 27, 2016, the trial court overruled Natalee's objections in part and sustained them in part.

The court concluded that Michael was entitled to the standard order of parenting time when he was in town. However, the court further concluded that the child support order should not have been reduced because no substantial change of circumstances occurred.

{¶ 17} In this regard, the court noted that, even though Michael had moved back to Ohio from Arizona, his income remained essentially the same as it had at the final divorce hearing, and had only increased by about 4%. The court also observed that Michael was still voluntarily unemployed, there had been no change in his present income, and that the situation was of Michael's own making. And finally, the court observed, without elaboration, that there had been no substantial change of circumstances in the childcare expenses.

{¶ 18} Michael now appeals from the trial court's decision.

## II. Alleged Inclusion of Veteran's Disability Benefits

{¶ 19} Michael's First Assignment of Error states that:

The Trial Court Erred in Overruling Magistrate Stoermer's 28 October 2105 [sic] Decision [Civ.R. 53] to Reduce Child Support Based on My Veterans Affairs 60% Disability Rating and Pay.

{¶ 20} Under this assignment of error, Michael contends that the trial court erred in rejecting the magistrate's conclusion that his veteran's disability benefits should be excluded as income for child support calculation purposes.

{¶ 21} We review child support decisions for abuse of discretion. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary, or unconscionable." (Citation

omitted.) *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). In this regard, the Supreme Court of Ohio has stressed that "most instances of abuse of discretion will result in decisions that are simply unreasonable." *Id.* The court has also said that "[a] decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

{¶ 22} R.C. 3119.01(C)(7) provides that among the items included in gross income for purposes of child support are "benefits that are not means-tested and that are received by and in the possession of the veteran who is the beneficiary for any service-connected disability under a program or law administered by the United States department of veterans' affairs or veterans' administration * * *." We have previously concluded that "VA benefits are subject to inclusion in the calculation of income for purposes of child support." *Lewis v. Lewis*, 2d Dist. Greene No. 2013-CA-68, 2014-Ohio-958, ¶ 18 (holding that the trial court did not abuse its discretion by including veteran's benefits within gross income under R.C. 3119.01(C)(7) for purposes of calculating child support).

{¶ 23} R.C. 3119.01(C)(7)(b) does contain an exclusion from gross income for "[b]enefits for any service-connected disability under a program or law administered by the United States department of veterans' affairs or veterans' administration that are not means-tested, that have not been distributed to the veteran who is the beneficiary of the benefits, and that are in the possession of the United States department of veterans' affairs or veterans' administration * * *."

{¶ 24} In *Avery v. Avery*, 2d Dist. Greene No. 2001-CA-100, 2002 WL 360296 (Mar. 8, 2002), we rejected the appellant's argument that his veteran's disability income

should have been excluded from gross income because he did "not really 'receive it.' " *Id.* at *6. His argument in this regard was that the "amount of the VA check is deducted from his military pension." *Id.* We observed that:

> While this may be true, it is irrelevant. Specifically, Joseph is not being charged for child support purposes with the full amount of his military pension; he is being charged only with the amount left after deduction of the disability waiver. Adding the disability waiver simply means that Joseph will be charged, for child support purposes, only with the actual amount of income he receives. Contrary to Joseph's belief, no amount is being counted twice. In fact, Joseph benefits from receiving part of his military retirement as disability, since it reduces the taxable amount of the retirement pay.

*Id.*

{¶ 25} The record at the hearing is devoid of evidence that Michael's veteran's disability benefits met the requirements of R.C. 3119.01(C)(7)(b), i.e., that it was not means-tested, had not been distributed to Michael, and was in the possession of the Department of Veteran's Affairs. As a result, the magistrate was incorrect in stating that Michael's veteran's disability benefits would not be includable in gross income under R.C. 3119.01(C)(7)(b). October 28, 2015 Magistrate's Decision, Doc. #104, p. 3. Accordingly, when the magistrate considered Michael's motion for a reduction in support, only the following items could have been properly included as "gross income" for purposes of child support: (1) Michael's retirement income; (2) Michael's disability income; and (3) Michael's current income.

{¶ 26} The child support worksheet attached to the divorce decree did not break down any items, but only used a figure of $85,000 for Michael as "income from employment." The worksheet also used a figure of $50,000 for Natalee's income from employment, and did not include retirement or disability income from either party. Neither party appealed from this decision. The decision, which was apparently by agreement of the parties, was beneficial to Michael.[4] As was noted, Michael's income prior to the divorce was more than $100,000 per year. If the trial court had added Michael's income from his military retirement and disability benefit to the $85,000 that appears to have been imputed, the child support could have been considerably higher. Natalee also benefited, because her own income from her share of Michael's retirement pension was not included in her income for the child support calculation. Specifically, Lines 5 and 6 of the worksheet (pertaining to disability and retirement income, and "other annual income") were left blank for both parties.

{¶ 27} In re-calculating child support, the Magistrate omitted the disability income and credited Michael with $62,064 in gross income. This included $20,748 in income from Michael's employment and $41,316 in Michael's retirement benefits (12 x $3,443 (the USAF retirement pension) per month = $41,316). If the magistrate had included the $1,534.32 that Michael also received monthly for his veteran's disability payment, his gross income for purposes of calculating child support would have been $80,475.84. ($1,534.32 x 12 = $18,411.84. $18, 411.84 + $62,064 = $80,475.84.)

{¶ 28} In overruling the objections to the magistrate's decision, the trial court did

---

[4] We say "apparently," because the transcript of the divorce hearing is not in the record, and we have no idea what was said at the hearing. In addition, Michael's attorney neither signed nor approved the final divorce decree.

not express an opinion about whether disability payments should be included. Instead, the court observed that Michael had been employed in human resources earning over $100,000 per year, and that the court had previously found that Michael's income was $85,000 due to voluntary underemployment.[5] The court rejected Michael's move from Arizona to Ohio as a substantial change of circumstances because his financial position had remained essentially the same since the time of the divorce hearing, "with an income increase of less than 4%." January 27, 2016 Decision and Judgment, Doc. #130, p. 4.

{¶ 29} "In order to modify child support, the trial court must find a substantial change in circumstances, which is defined in R.C. 3119.79(A) as a ten-percent deviation from the amount of child support previously ordered." *Howell v. Howell*, 167 Ohio App.3d 431, 2006-Ohio-3038, 855 N.E.2d 533, ¶ 47 (2d Dist.).

{¶ 30} We agree with the trial court that no substantial change in circumstances in this regard occurred under R.C. 3119.79(A). After reviewing the record, it appears that one component in the calculation, Michael's income at the time of the hearing, appears to have been nearly identical to his income when child support was originally calculated. A child support computation difference of 10 percent more or less from the prior order will constitute a "change of circumstance substantial enough to require a modification of the child support amount." R.C. 3119.79(A). As a result, the trial court did not abuse its discretion in refusing to modify the support obligation on Michael's claim of a substantial change of income. The First Assignment of Error, therefore, is overruled.

---

[5] There are no findings in the divorce decree about voluntary underemployment. And again, the transcript of the divorce hearing is not in the record.

### III.   Alleged Error in Entering Childcare Expenses

{¶ 31} Michael's Second Assignment of Error states that:

The Trial Court Erred in Overruling Magistrate Stoermer's 28 October 2015 Decision [Civ.R. 53] Regarding Child Care Expenses Found on Line 19b of the Child Support Computation Worksheet Filed with the June 1, 2015 Final Judgment and Decree of Divorce at $9,200.[6]

{¶ 32} Under this assignment of error, Michael contends that the trial court erred in using a figure of more than $9,000 in childcare expenses for purposes of calculating the support obligation, rather than the $3,752 figure the magistrate used.   In responding to Michael's argument, Natalee cites to the transcript of the final divorce hearing, where Michael allegedly accepted the terms of the agreement as to daycare expenses.   The transcript of the final divorce hearing is not in the record, and we cannot consider facts that are not in the record.

{¶ 33} Furthermore, whether or not Michael agreed at the time is irrelevant. Parties are entitled to file for modification at any time under R.C. 3119.79, assuming they can prove a change in circumstances under that section, and assuming they did not agree to forego attempts to modify support.   In this regard, R.C. 3119.79(A) provides that:

If an obligor or obligee under a child support order requests that the court modify the amount of support required to be paid pursuant to the child support order, the court shall recalculate the amount of support that would be required to be paid under the child support order in accordance with the schedule and the applicable worksheet through the line establishing the

---

[6] The actual figure used was $9,020, not $9,200.

actual annual obligation. If that amount as recalculated is more than ten per cent greater than or more than ten per cent less than the amount of child support required to be paid pursuant to the existing child support order, the deviation from the recalculated amount that would be required to be paid under the schedule and the applicable worksheet shall be considered by the court as a change of circumstance substantial enough to require a modification of the child support amount.

{¶ 34} "R.C. 3119.79(A) clearly provides that to determine whether a 10 percent difference exists, the court must compare the recalculated guidelines amount * * * to the 'amount of child support required to be paid pursuant to the existing child support order' * * *." *Williams v. Williams*, 10th Dist. Franklin No. 15AP-739, 2016-Ohio-3344, ¶ 9, quoting R.C. 3119.79(A) and citing *Moore v. Moore*, 5th Dist. Guernsey No. 09-CA-21, 2010-Ohio-2499.

{¶ 35} "When calculating child support, a trial court has discretion to determine what amount of child-care expenses should be included on a child-support worksheet." *Qi v. Yang*, 2d Dist. Greene No. 2012-CA-24, 2012-Ohio-5542, ¶ 23, citing *Johnson v. McConnell,* 2d Dist. Montgomery No. 24115, 2010-Ohio-5900, ¶ 23. All claimed daycare expenses are not automatically included in the calculation; instead, the court has discretion to decide an appropriate amount. *Id.* We have stressed that the party who claims childcare expenses has the burden of showing "how and why the expenses she claimed are reasonable." *Daufel v. Daufel*, 2d Dist. Montgomery No. 22584, 2008-Ohio-3868, ¶ 38.

{¶ 36} At the hearing held in September 2015, Natalee testified that she still had

$9,000 in annual daycare expenses for the children. September 22, 2015 Transcript of Proceedings, p. 16. As was noted above, the documentation contradicts this testimony, as Natalee provided documentation only for a total of $3,302.50 for daycare for 2015 ($2,720 for daycare in her home for June and July 2015, and $582.50 for amounts paid for daycare in August 2015 at Centerville Safe Care).[7] These are the only two providers Natalee identified, and she should have been able to provide receipts for her costs. In contrast, Michael presented documentation that Natalee had spent only $687.50 at Centerville Safe Care for the year up through September 16, 2015. He did not dispute the figures for the June and July care at Natalee's home.

{¶ 37} Natalee did provide a paper on which she had apparently estimated various daycare expenses she would have for the year, but there is no documentation indicating that these expenses were actually incurred. *See* Ex. 1, p. 1. As was noted, the only childcare provider mentioned by Natalee in her testimony (other than her summer help) was Centerville Safe Care, and documentation from that facility indicated that only a total of $687.50 in expenses had been incurred through September 16, 2015. Even if this figure is ignored, Natalee still only provided some evidence of $3,302.50 for expenses incurred prior to the date of the hearing (September 22, 2015).

{¶ 38} The magistrate apparently did not credit Natalee's unsupported testimony, which conflicted with the documentation, and used a figure of $3,752 for childcare expenses. In ruling on Natalee's objections, the trial court disagreed, and continued to

---

[7] In this regard, it should be noted that even with respect to the $2,720 claimed for daycare in her home, Natalee did not provide receipts or cancelled checks for these payments; she simply submitted a piece of paper on which she had listed amounts paid for these months.

use the original $9,020 figure for childcare when it filled out its own child support worksheet. *See* January 27, 2016 Decision and Judgment, Doc. #130, Child Support Calculation Worksheet Dated January 7, 2016, p. 3. The trial court did not provide any reasoning for its conclusion.

{¶ 39} Although trial courts have discretion in these matters, they cannot ignore documentary evidence in the record, particularly when it contradicts a party's testimony. As was noted, the evidence indicated, at best, expenses for childcare through September 22, 2015, of only $3,407.50 [$2,720 (home daycare in June and July) plus $687.50 (Centerville Safe Care)]. The magistrate extrapolated a yearly figure from this of $3,752, and the trial court's decision to use a $9,020 figure for child care expenses is not supported by the evidence. Natalee had the burden of establishing her expenses, and she failed to do so.

{¶ 40} This case involves a child support computation worksheet for a sole residential parent under R.C. 3119.022. "Line 19 of the Child Support Worksheet set forth in R.C. 3119.022 addresses the '[a]nnual child care expenses for children who are the subject of this order that are work-, employment training-, or education-related, as approved by the court or agency (deduct tax credit from annual cost, whether or not claimed).' A percentage of the approved annual child care expenses are added into the obligor's annual child support obligation on line 21 (when health insurance is provided) or line 24 (when health insurance is not provided)." *Johnson,* 2d Dist. Montgomery No. 24115, 2010-Ohio-5900, at ¶ 16. An adjustment is required " 'only when child care expenses a party claims are "approved by the court." ' " *Id.,* quoting *Daufel,* 2d Dist. Montgomery No. 22584, 2008-Ohio-3868, at ¶ 38.

**{¶ 41}** For purposes of discussion, we will use the amount found by the magistrate. Entering that figure on Line 19b of the January 7, 2016 worksheet used by the trial court would result in a child support obligation of $15,171.79 for Michael if health insurance were provided (and it was, in this case). This amount is derived by adding Michael's annual support obligation on Line 18a ($12,620.65) to the adjustments to child support when health care insurance is provided. *See* Line 21a of the worksheet.

**{¶ 42}** The amount calculated by using the formula for adjustments in Line 21a is $2,551.14. Specifically, Michael's share of the parties' combined annual income (62.96%) is multiplied by the sum of the amounts shown on line 19, Column II ($3,752) and line 20a, Column II ($300). The sum of these two items is $4,052. 62.96% of $4,052 equals $2,551.14. Adding $12,620.65 to $2,551.14 results in a total annual support obligation for Michael of $15,171.79. Further dividing this figure by 12 results in a monthly support obligation of $1,264.32, or 632.16 per child.[8]

**{¶ 43}** Michael's original support obligation calculated in the worksheet attached to the divorce decree was $18,488.52 (with health insurance), and $17,402.16, plus $201.92 cash medical support (without health insurance). These amounts of support, respectively, were $1540.71 and $1,652.10 monthly (without processing fees included). Originally, a withholding order was issued on June 1, 2015, indicating that an amount of $1,570.80, which included the 2% processing fee, would be withheld. The new amount of child support after Michael's modification motion would have been $1,264.32, plus $25.29 (the 2% processing fee), or a total of $1,289.61. Comparing these figures, there

---

[8] These figures are rounded up to the nearest penny and do not include a 2% processing fee. We are not including the support figures without health insurance, because Michael insured the children under Tri-Care.

is more than a 10 percent difference.

{¶ 44} 10 percent of the amount of child support awarded in the divorce decree (1,540.71) is $154.07. That amount, subtracted from $1,540.71 is $1,386.64. A reduction to $1,264.32 would clearly exceed the requirement of being "more than ten per cent less than the amount of child support required to be paid pursuant to the existing child support order * * *." R.C. 3119.79(A).[9] As a result, the trial court's decision in this regard was not supported by sound reasoning, and was an abuse of discretion. *AAAA Enterprises, Inc.*, 50 Ohio St.3d at 161, 553 N.E.2d 597.

{¶ 45} As noted, we have previously said that "[i]n order to modify child support, the trial court must find a substantial change in circumstances, which is defined in R.C. 3119.79(A) as a ten-percent deviation from the amount of child support previously ordered." *Howell*, 167 Ohio App.3d 431, 2006-Ohio-3038, 855 N.E.2d 533, at ¶ 47. *Accord Cornell v. Cornell*, 2d Dist. Montgomery No. 26732, 2015-Ohio-5296, ¶ 9. In *Cornell*, we noted that:

When a motion to modify is filed, the court must recalculate the amount of support that would be required to be paid by using the child support schedule and the applicable worksheet. R.C. 3119.79(A). If the amount deviates 10% more or less from the prior order, the statute states that "the deviation from the recalculated amount that would be required to be paid under the schedule and the applicable worksheet *shall be considered by the court as a change of circumstance substantial enough to*

---

[9] We are not including the figures for parties not having health insurance, but we did calculate that support amount, and a deviation of more than 10 percent also exists.

*require a modification of the child support amount.*"  (Emphasis added.) *Id.* Thus, in this situation, the trial court has no discretion, but must consider the amount a change of circumstances sufficient to require modification.

*Id.* at ¶ 9.

{¶ 46} In *Cornell*, the appellant did not argue that the calculations in the worksheet were incorrect, but instead argued about the circumstances of the parties.   We rejected this argument, noting the prior observation of the Supreme Court of Ohio that " '[t]he ten percent difference applies to the *change in the amount of child support*, not to the change in circumstances of the parents.' "   (Emphasis in original.)   *Id.* at ¶ 11, quoting *DePalmo v. DePalmo*, 78 Ohio St.3d 535, 540, 679 N.E.2d 266 (1997).   We also indicated that " 'the parties' prior agreement cannot override the trial court's duty to review the child-support issue * * *.' "   *Id.* at ¶ 12, quoting *Quint v. Lomakoski*, 173 Ohio App.3d 146, 2007-Ohio-4722, 877 N.E.2d 738, ¶ 40 (2d Dist.), which in turn, cited *DePalmo* at 539-540.

{¶ 47} In *DePalmo*, the court stressed that:

The law favors settlements.   However, the difficult issue of child support may result in agreements that are suspect.   In custody battles, choices are made, and compromises as to child support may be reached for the sake of peace or as a result of unequal bargaining power or economic pressures.   The compromises may be in the best interests of the parents but not of the child.   Thus, the legislature has assigned the court to act as the child's watchdog in the matter of support.

*DePalmo* at 540.

{¶ 48} The statute discussed in *DePalmo* is R.C. 3113.215, and more specifically, R.C. 3113.215(B)(4). *Id.* at 539-540. Although this subsection has been re-codified as R.C. 3119.79, there has been no change in the statute, and the court's observations in *DePalmo* still apply.

{¶ 49} In this regard, we note that R.C. 3113.215 was originally enacted in 1990. *See* H.B. No. 591, 1990 Ohio Laws File 183. The wording of R.C. 3113.215(B)(4) remained essentially the same since its enactment.[10] Ultimately, in 2001, R.C. 3113.215(B)(4) was re-codified as R.C. 3119.79. *See* S.B. 180, 2000 Ohio Laws File 291 (effective March 22, 2001). The wording remained the same, however, with the only change being that this subsection (which had previously been one long paragraph) was separated into three parts: (A), (B), and (C).

{¶ 50} Specifically, the part of R.C. 3113.215(B)(4) deeming a 10 percent difference a circumstance "substantial enough to require a modification of the child support amount" became R.C. 3119.79(A). Another part of R.C. 3113.215(B)(4) that required courts to consider the cost of health insurance in determining whether the recalculated amount was a 10 percent difference became R.C. 3119.79(B). And finally, the remaining part of R.C. 3113.215(B)(4), which pertained to "a substantial change of circumstances that was not contemplated at the time of the issuance of the original child

---

[10] R.C. 3113.215 was amended a number of times between 1990 and 2001, when R.C. 3113.215(B)(4) was re-codified as R.C. 3119.79. However, the pertinent wording has always remained essentially the same. *Compare* H.B. No. 591, 1990 Ohio Laws File 183; H.B. 514, 1990 Ohio Laws File 276; S.B. No. 3, 1990 Ohio Laws File 314; S.B. 115, 1993 Ohio Laws File 46; H.B. 173, 1993 Ohio Laws File 72; H.B. 415, 1994 Ohio Laws File 196; S.B. 355, 1994 Ohio Laws File 218; H.B. 249, 1995 Ohio Laws File 7; H.B. 167, 1995 Ohio Laws File 59; H.B. 274, 1996 Ohio Laws File 143; H.B. 670, 1996 Ohio Laws File 249; H.B. 408, 1997 Ohio Laws File 42; H.B. 352, 1997 Ohio Laws File 79; H.B. 495, 2000 Ohio Laws File 154.

support order or the last modification of the child support order" became R.C. 3119.79(C). Compare H.B. 591, 1990 Ohio Laws File 183 (which enacted R.C. 3113.215 in 1990), with R.C. 3119.79.

{¶ 51} We concluded in a prior case that "the clear language of the statute provides that the mere fact that support calculated in accordance with the guidelines differs by more than 10% from the support currently ordered, by itself, is sufficient to trigger a recalculation." *Smith v. Smith*, 2d Dist. Montgomery No. 16183, 1997 WL 435697, *2 (July 25, 1997) [discussing R.C. 3113.215(B)(4)]. *But see Baire v. Baire*, 102 Ohio App.3d 50, 656 N.E.2d 984 (2d Dist.1995) (where the majority holds that a ten percent "deviation, without more, is not sufficient to justify a modification of the support order. Rather, before the court may modify the child support order, it must also find that this 'change of circumstance' was not contemplated at the time the original support order was made.")

{¶ 52} *Smith* was decided after *DePalmo* had been issued, even though it did not discuss the case. In contrast, our decision in *Baire* appears to be inconsistent with the decision in *DePalmo*, which stresses that the relevant factor is the *change in the amount of support*, not a change in circumstances of the parents. *DePalmo*, 78 Ohio St.3d at 540, 679 N.E.2d 266. Obviously, *DePalmo* had not yet been decided when *Baire* was issued. However, we did cite *Baire* in a subsequent case that was decided after *DePalmo*. See *In re S.H.*, 2d Dist. Montgomery No. 23382, 2009-Ohio-6592, ¶ 47.

{¶ 53} *S.H.* did not deal with the 10 percent threshold test in R.C. 3119.79(A), and did not discuss R.C. 3119.79. Instead, the issue was the trial court's failure to complete a child support worksheet and its decision to deviate from the statutorily presumed

amount of support in R.C. 3119.03 without making any factual findings to support its decision. *Id.* at ¶ 43. We concluded that the trial court had erred in these respects, including its failure to explain its deviation from the State guidelines and its failure to include the findings of fact required by R.C. 3119.22. *Id.* at ¶ 47-48.

**{¶ 54}** In this regard, we cited *Baire*, stating that "[s]uch findings were particularly important in this case given the fact that [the obligor] was also unemployed when the initial support order was issued. *See Baire v. Baire* (1995), 102 Ohio App.3d 50, 55, 656 N.E.2d 984 (stating that a deviation is not sufficient to support a modification if the deviation was 'within the contemplation of the parties and the court at the time the original support order was issued.')" *Id.* at ¶ 47. Our decision was mandated, however, by *Marker v. Grimm*, 65 Ohio St.3d 139, 601 N.E.2d 496 (1992), which stated that "[a]ny court-ordered deviation from the applicable worksheet and the basic child support schedule must be entered by the court in its journal and must include findings of fact to support such determination." *Id.* at paragraph three of the syllabus.

**{¶ 55}** Although *Marker* involved R.C. 3113.215(B)(1)(a) and (b), this part of R.C. 3113.215(B), like R.C. 3113.215(B(4), was re-codified in 2001. At that time, this part of R.C. 3113.215(B)(1) became R.C. 3119.22. See S.B. 180, 2000 Ohio Laws 291 (effective March 22, 2001). Similarly, the part of R.C. 3113.215(B)(1) dealing with the fact that the amounts calculated on the worksheet are rebuttably presumed to be correct was re-codified as R.C. 3119.03. *Id.* No significant differences exist in the statutes as re-codified, and *Marker* would have dictated the result in *S.H.*

**{¶ 56}** In the meantime, the Supreme Court of Ohio issued its decision in *DePalmo*, which dealt with a situation in which support had initially been waived in 1990. *DePalmo*,

78 Ohio St.3d at 535-536, 679 N.E.2d 266.   When the child's father moved for an order of support in 1994, the mother argued that "the test of R.C. 3113.215(B)(4) for determining whether modification of support is warranted did not apply" because there had been no prior support order.   *Id.* at 536.   She also argued that the court should instead use the "dual threshold test" in *Anderkin v. Lansdell*, 80 Ohio App.3d 687, 610 N.E.2d 570 (12th Dist.1992).   *Id.*

{¶ 57} Under this test, use of the 10 percent threshold test was restricted in situations where the parties had agreed that the noncustodial parent was not required to make support payments.   *Anderkin* at 690-691.   Instead, courts applied the "dual threshold test," which allowed modification only where a change in circumstances had occurred so that the custodial parent could no longer provide the total amount of support that was reasonable, or where the non-custodial parent's circumstances had substantially changed so that the trial court could find, in its discretion, that support from the non-custodial parent was in the children's best interests.   *DePalmo* at 538.   In support of this test, the mother in *DePalmo* argued that "that circumstances at the time of the hearing were substantially similar to those on * * * the date of the original agreement * * *."   *Id.* at 535.

{¶ 58} The Supreme Court of Ohio rejected the use of the dual threshold test.   First, the court stated that whether a support order is currently in existence "is a distinction without a difference and is immaterial to whether child support should be calculated according to the statutory guidelines."   *Id.* at 539.   As was noted, the court then stated that "[i]f a support order *already* exists, the only test to determine whether child support shall be modified is set forth by R.C. 3113.215(B)(4) [now R.C. 3119.79] * * *."

(Emphasis sic.) (Parenthetical material added.)  *Id.*

{¶ 59} The court went on to stress the requirement of strictly complying with the Child Support Guidelines, and stated that "[o]bviously, when the amount of child support provided by the noncustodial parent is zero, but the Child Support Guidelines clearly establish that the noncustodial parent owes support, then that ten percent difference is clearly met."  *DePalmo*, 78 Ohio St.3d at 540, 679 N.E.2d 266.  Notably, the court did not consider whether the change in circumstances was contemplated at the time of the original order, and did not agree with the obligor's argument that support (or rather the order of no support) should not be modified because "circumstances at the time of the hearing were substantially similar to those on * * * the date of the original agreement." *Id.* at 536-537.

{¶ 60} Ultimately, the Supreme Court of Ohio stated that "[w]hen the court is modifying a preexisting order for the payment of child support, the court must apply the ten percent test established by R.C. 3113.215(B)(4) [now R.C. 3119.79(A)] in the Child Support Guidelines and the standards set out in *Marker* [*v. Grimm*, 65 Ohio St.3d 139, 601 N.E.2d 496 (1992)]."  (Parenthetical material added.).  *DePalmo* at 540-541.[11]

{¶ 61} As a result, the trial court was required to recalculate the support and, if the difference were more or less than 10 percent, that would constitute a substantial change in circumstances.  This is not to say that the trial court has no discretion at all in the

---

[11] *Marker* required trial courts to strictly comply with the terms in R.C. 3113.215 and make child support worksheets part of the record.  *Marker*, 65 Ohio St.3d 139, 601 N.E.2d 496, at paragraphs one and two of the syllabus.  As was noted, although R.C. 3113.215 was later repealed and re-codified, there has been no change in these requirements.  *See, e.g., Mattis v. Mattis*, 10th Dist. Franklin No. 15AP-446, 2016-Ohio-1084, ¶ 27; *Cornell*, 2d Dist. Montgomery No. 26732, 2015-Ohio-5296, at ¶ 17; *Johnson*, 2d Dist. Montgomery No. 24115, 2010-Ohio-5900, at ¶ 14.

matter. R.C. 3119.22 specifically allows courts to deviate from the amount of support calculated if that amount "would be unjust or inappropriate and would not be in the best interest of the child." In this situation, however, the trial court must comply with *Marker* by including "findings of fact to support such determination." *Marker*, 65 Ohio St.3d 139, 601 N.E.2d 496, at paragraph three of the syllabus. This is consistent with our decision in *S.H.*, 2d Dist. Montgomery No. 23382, 2009-Ohio-6592, even though we did not rely on *Marker*.

{¶ 62} Some courts have held that R.C. 3119.79(A) and (C) must be read in conjunction where there has been a prior voluntary agreement to pay child support in an amount exceeding the statutory child support guideline. *See Bonner v. Bonner*, 3d Dist. Union No. 14-05-26, 2005-Ohio-6173, ¶ 11. In a later decision, the Third District Court of Appeals extended its holding in *Bonner* to a situation where the parties had entered into a separation agreement "to deviate the child support obligation to zero." *Adams v. Adams*, 2012-Ohio-5131, 982 N.E.2d 103, ¶ 30 (3d Dist.).

{¶ 63} *Bonner* has been distinguished in situations not involving a voluntary agreement. *See Banfield v. Banfield*, 12th Dist. Clermont Nos. CA-2010-09-066, CA2010-09-068, 2011-Ohio-3638, ¶ 23.

{¶ 64} In *Reik v. Bowden*, 172 Ohio App.3d 12, 2007-Ohio-2533, 872 N.E.2d 1253 (1st Dist.), the court of appeals stated that a difference of more than 10 percent and the amount of the original order of child support is "a change of circumstances as a matter of law." *Id.* at ¶ 18. The court of appeals distinguished *Bonner*, based on the fact that the parties there had "agreed to deviate from the statutory amount, and the order explained the terms of their agreement." *Id.* at ¶ 27 and fn. 19. In this regard, the court noted that:

Such agreed orders function like any other contract. When parties voluntarily agree to limit the circumstances under which they will seek to modify a support order, they remain bound by the terms that they set forth in their agreement and cannot modify the order even if they can make a showing of a 10 percent change. For example, if [a] party agrees not to seek modification unless either there is a change in custody or he becomes disabled, he is bound by that agreement.

(Footnotes omitted.) *Id*. We have agreed with *Reik* that "interpretation of language used by parties in an agreed entry is governed by contract principles and is subject to the same rules." *Klein v. Botelho*, 2d Dist. Montgomery No. 24393, 2011-Ohio-4165, ¶ 20, citing *Reik* at ¶ 12 (Other citations omitted.)

**{¶ 65}** Assuming that the divorce decree in the case before us was an "agreed entry," nothing in the decree precludes either party from seeking modification of child support. We also note that the decision in *Adams* appears to conflict with *DePalmo*. Specifically, in *DePalmo*, the trial court's original judgment entry in 1990 "incorporated [father's] waiver of all support from [mother]." *DePalmo*, 78 Ohio St.3d at 536, 679 N.E.2d 266. Despite this agreement, the Supreme Court of Ohio did not require a finding of a substantial change in circumstances beyond the 10 percent difference. Instead, the court stated that "[o]bviously, when the amount of child support provided by the noncustodial parent is zero, but the Child Support Guidelines clearly establish that the noncustodial parent owes support, then that ten percent difference is clearly met." *Id*. at 540. As was noted previously, despite the re-codification of the child support statutes in 2001, nothing pertinent has changed in the wording of the provisions considered in

*DePalmo.*

**{¶ 66}** Nonetheless, even if we required a substantial change in circumstances not contemplated by the prior order, such a change existed in the case before us. When the trial court used $9,020 as the child support figure in the original order, one assumes that it was anticipated that this was the amount that would be spent on childcare. Clearly, that did not occur.

**{¶ 67}** Accordingly, after due consideration, we conclude that the trial court abused its discretion in calculating the amount of childcare expenses. We, therefore, sustain the Second Assignment of Error.

**{¶ 68}** On remand, the trial court should enter the $3,752 figure as childcare expenses on the child support worksheet and recalculate the amount of support due. We are not remanding for further hearing on the issue of the amount of childcare expenses; this is the amount that was supported by the evidence presented at the modification hearing. Again, if Natalee had receipts for other childcare expenses, she should have presented them at the hearing, as she had the burden of establishing the amount of her childcare expenses. We express no opinion concerning whether a deviation in the amount of support ordered would be appropriate under R.C. 3119.22.

## IV. Conclusion

**{¶ 69}** Michael's First Assignment of Error having been overruled, and his Second Assignment of Error having been sustained, the judgment of the trial court is affirmed in part and reversed in part, and this matter is remanded for proceedings consistent with our opinion.

. . . . . . . . . . . .

FAIN, J., concurs.

HALL, J., concurring in part and dissenting in part:

{¶ 70} I agree with the conclusion that the trial court did not include Appellant-Father's Veteran's Affairs disability pay in the child support computations as asserted in the first assignment of error. Father had quit his job paying over $100,000.00 per year in order to pursue a career as a golf instructor. The trial court reasonably concluded that Appellant was still voluntarily underemployed and an $85,000.00 income should be attributed to him. This is the same amount utilized for his income in the Final Decree of Divorce filed June 1, 2015, just two weeks before his June 15, 2015 motion for modification of support. It did not include his disability benefit.

{¶ 71} I write separately however to detail my analysis regarding the amount of child care expenses included in a support worksheet to determine whether there is a 10% difference in support to be considered as a change in circumstances substantial enough to require a modification. R.C. 3119.79(A). I am of the opinion that it was Appellant's burden to demonstrate at the hearing that there was such a change in circumstances to produce a change in support. *Johnson v. Melton,* 12th Dist. Butler No. CA2010-07-160, 2011-Ohio-792, ¶ 17-21 (holding that a trial court does not abuse its discretion using the non-movant's prior amount for child care expenses when the party seeking modification does not show a change in the non-movant's child care expenses.) Here Appellant presented only his own testimony during which he did not mention anything about child care expenses or any perceived reduction in mother's child care expenses. Had the hearing concluded at that point, the trial court would have been justified in using the prior

child care amount for a current worksheet.

**{¶ 72}** However, Mother then testified in response. She said she still had "$9,000" for child care, most likely a rounding of the $9020 used in the Decree worksheet.[12] But then mother also referred to Exhibit 1, her list of daycare expenses. That statement is broken down into two parts. The first part is for "Summer/school days off" which is a detailed calculation of the costs for day care for each child for the days they are not in school during the school year, and the costs for the days that they are out of school in the summer. This amount totals $4,760.00. The remainder of the grand total is an amount projected for after-school care listed as "During the school year is $4260." This second amount does not include the non-school days listed in the first part. The exhibit also states "(however, due to the fact that my work allows me to come home early …I am not paying for after school care right now)." With this exhibit, mother's evidence is that she has only $4,760.00 for annual child care expenses. It may be that she is, or was, no longer able to get off work early and actually incurred, or will incur, the additional school year work related child care, but she should not have been able to include amounts she did not actually incur unless perhaps that had been part of the agreement at the time of the settlement leading to the decree. In my opinion, these are matters for the trial court to determine upon remand. Accordingly, upon remand I would leave it to the trial court to either determine from the record the amount of child care expenses to use, not exceeding the $4,760.00 presented by the evidence, or conduct or order a new hearing under the authority of Civ. R. 53.

---

[12] I agree that we do not know precisely why, or how, the $9020 figure was used at the time of the decree. The transcript of the terms agreed to at the final hearing is not in our record.

. . . . . . . . . . . . . .

Copies mailed to:

David P. Mesaros
Adam R. Mesaros
Michael D. Landers
Hon. Timothy D. Wood