[Cite as *Kulis v. Kulis*, 2022-Ohio-3114.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

RENAE F. KULIS,

        Plaintiff-Appellant,

- v -

MATTHEW T. KULIS,

        Defendant-Appellee.

CASE NO. 2021-L-120

Civil Appeal from the
Court of Common Pleas,
Domestic Relations Division

Trial Court No. 2014 DR 000293

## O P I N I O N

Decided: September 6, 2022
Judgment: Affirmed

*Scott S. Rosenthal* and *Alexis M. Gacey*, Rosenthal, Thurman, Lane, LLC, North Point Tower, 1001 Lakeside Avenue, Suite 1720, Cleveland, OH 44114 (For Plaintiff-Appellant).

*Jill Friedman Helfman*, Taft, Stettinius & Hollister, LLP, 200 Public Square, Suite 3500, Cleveland, OH 44114 (For Defendant-Appellee).

*Joy Ann Zeiler Courtright*, 3201 Enterprise Parkway, Suite 130, Beachwood, OH 44122 (Guardian ad Litem).

MARY JANE TRAPP, J.

{¶1} Appellant, Renae F. Kulis n.k.a. Kezar ("Ms. Kezar"), appeals from the judgment of the Lake County Court of Common Pleas, Domestic Relations Division, in which the trial court rejected, in part, the magistrate's decision, overruled her objections to that decision, and denied her motion to modify child support regarding her minor children with her former spouse, appellee Matthew T. Kulis ("Mr. Kulis").

{¶2} Ms. Kezar asserts two assignments of error, contending that the trial court erred (1) by failing to equally allocate the private school tuition expense for the parties'

minor children, or, alternatively, by failing to provide her with a child support deviation for assuming 100% of the tuition expense, and (2) by denying her motion to modify child support.

{¶3} After a careful review of the record and pertinent law, we find the following:

{¶4} (1) The trial court did not err by declining to equally allocate the private school tuition expense for the parties' minor children. The case upon which Ms. Kezar primarily relies does not provide an independent legal basis for the allocation of tuition expenses, nor is it the starting point for considering the modification of child support. In addition, Ms. Kezar did not reference the statutory provisions authorizing the modification of a shared parenting plan or purport to establish any of the specific circumstances set forth therein.

{¶5} (2) Ms. Kezar has not established reversible error with respect to the trial court's denial of her motion to modify child support. The ten percent differential "change of circumstance" test in R.C. 3119.79(A) remains applicable when a trial court is considering a modification of a child support order for high income parents.

{¶6} (3) The trial court did not err by failing to grant Ms. Kezar a downward deviation in her child support obligation. The deviation factors are implicated when the trial court fashions a child support award. The trial court had no occasion to fashion a child support award because it found that there was no substantial change in circumstances to warrant a modification of child support.

{¶7} Thus, we affirm the judgment of the Lake County Court of Common Pleas, Domestic Relations Division.

**Substantive Facts and Procedural History**

2

Case No. 2021-L-120

{¶8} Ms. Kezar and Mr. Kulis married in 2005 and had two children born in 2010 and 2012, respectively. In 2015, the parties were divorced pursuant to a judgment entry (the "divorce decree"), which incorporated and attached a separation agreement and a shared parenting plan.

{¶9} Both parents were designated as residential parents and legal custodians of the two minor children, who were then 3- and 5-years-old. Ms. Kezar was designated as the health insurance and child support obligor. At the time of their divorce, the parties worked for the same employer and lived in the Netherlands on an expatriate assignment. The parties' combined adjusted gross income was $386,875, with Ms. Kezar earning $234,081 (60%) and Mr. Kulis earning $152,793 (40%). The parties agreed that Ms. Kezar would pay child support of $500 per month ($250 per child, per month). This figure represented a downward deviation from the figure set forth in the statutory child support worksheet. The express reasons for this deviation were the parenting time schedule, the relative financial resources of the parents, and the other child-related expenses each parent covers pursuant to the shared parenting plan.

{¶10} The parties' shared parenting plan contains the following provision regarding the children's education:

{¶11} "Both parties agree that they desire that their children receive the best possible education available to the children. The parents agree that any decision to change schools will be made only if the parents mutually agree that a change of schools is in the best interests of the child * * *. The parents agree to consider all educational needs of the children including any tutoring or appropriate instructional, special or gifted opportunities for the children in order to enhance the children's performance at school.

3

Mother shall be responsible for 100% of expenses associated with such agreed-upon additional instruction, including uniforms and/or school fees."

{¶12} The shared parenting plan does not expressly reference private school or the allocation of private school tuition.

{¶13} In 2015, both parties moved back to the United States. Ms. Kezar enrolled the children in private school, first at St. Rita's and subsequently at Gilmour Academy, and she paid all of the children's tuition expense. Ms. Kezar also remarried at the end of 2016.

{¶14} The tuition expense for the children's private school became a significant dispute between the parties. According to Mr. Kulis, Ms. Kezar unilaterally enrolled the children in private school despite the availability of quality public schools in their areas of residence. He only agreed to the children attending Gilmour Academy because Ms. Kezar expressly agreed in email correspondence to pay all tuition. According to Ms. Kezar, she did not commit to paying the children's tuition indefinitely. She requested tuition assistance from Mr. Kulis, but he did not contribute.

{¶15} In 2018, Ms. Kezar filed two motions in the trial court: (1) a motion to modify child support and (2) a motion to modify allocation of parental rights and responsibilities and/or motion to modify shared parenting. In her first motion, Ms. Kezar sought modification of the current child support order based on a change of circumstances in the parties' respective incomes and expenses. In her second motion, Ms. Kezar sought modification of the provisions in the shared parenting plan in relation to the children's medical matters and their activities.

{¶16} In August 2020, the parties entered into an agreed judgment entry. The entry incorporated and attached a shared parenting plan to modify and replace the prior

4

plan. In a section titled, "child support and dependency exemptions," the plan stated, "The child support and dependency exemption provisions of the parties' divorce decree shall continue in full force and effect until and unless those provisions are modified by Court Order, including but not limited to the current motions to modify pending before the Court."

{¶17} In a section titled, "school and educational matters," the plan stated, "The children shall continue to attend school at Gilmour Academy absent mutual agreement between the parties or a substantial change in circumstances. If the parties mutually agree or there is a change in circumstances, the parties shall agree upon the new school or shall submit the issue to the Court for resolution. Neither parent is authorized to enroll the children in a new school absent mutual agreement of the parents or Court Order."

{¶18} The magistrate held an evidentiary hearing on Ms. Kezar's motion to modify child support over two days in November 2020 and March 2021, respectively. Both parties testified and submitted numerous exhibits.

{¶19} The magistrate prepared child support computation worksheets for 2019 and 2020. For 2019, the parties had a combined adjusted gross income of $716,289.37, with Ms. Kezar earning $353,790.70 (49%) and Mr. Kulis earning $362,498.67 (51%). The increase in Mr. Kulis' income was due mainly to his severance pay from his prior employer. The 2020 worksheet showed a combined adjusted gross income of $585,927.52, with Ms. Kezar earning $332,985.30 (57%) and Mr. Kulis earning $252,942.22 (43%).

{¶20} The magistrate filed a decision setting forth findings of fact and conclusions of law. Rather than ordering Mr. Kulis to contribute to the children's tuition, the magistrate found that Ms. Kezar's payment of the children's tuition expense was more appropriately

5

considered as a deviation factor for child support purposes. The magistrate determined that it was in the children's best interest that Ms. Kezar's child support obligation payable to Mr. Kulis be zero. Thus, the magistrate granted Ms. Kezar's motion to modify child support.

{¶21} Both parties filed preliminary and supplemental objections to the magistrate's decision and briefs in opposition to the other party's objections.

{¶22} The trial court filed a judgment entry denying Ms. Kezar's objections and granting Mr. Kulis' objection. The trial court determined that Ms. Kezar's "unilateral decision" to enroll the children in private school and pay tuition left her as the sole obligor. The trial court also determined that there had been no significant change in circumstances pursuant to R.C. 3119.79(A) to warrant a modification of child support. Thus, the trial court denied Ms. Kezar's motion to modify child support.

{¶23} Ms. Kezar appealed and presents the following two assignments of error:

{¶24} "[1.] The Trial Court erred and abused its discretion in failing to allocate the parties' minor children's tuition expense equally between Appellant and Appellee, or at the least, in failing to provide Appellant with a child support deviation for assuming 100% of the private school tuition expense.

{¶25} "[2.] The Trial Court erred and abused its discretion by denying Appellant's Motion to Modify Child Support, after the Magistrate found it valid and appropriate that the Appellant's child support obligation payable to the Appellee be zero."

**Standard of Review**

{¶26} In an appeal from a trial court's judgment adopting or rejecting a magistrate's decision, we determine whether the trial court abused its discretion. *Nedel v. Nedel*, 11th Dist. Portage No. 2007-P-0022, 2008-Ohio-1025, ¶ 27. An abuse of

6

discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.Rev.2004).

**{¶27}** Where the issue on review has been confided to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error. *Id.* at ¶ 67. When a pure issue of law is involved in appellate review, however, the mere fact that the reviewing court would decide the issue differently is enough to find error. *Id.*

## Allocation of Tuition Expense

**{¶28}** Within her first assignment of error, Ms. Kezar contends that the trial court erred by failing to equally allocate the children's tuition expense.

**{¶29}** Ms. Kezar first argues that the trial court should have allocated 50% of the private school tuition expense to Mr. Kulis as a form of child support. She relies on *Kaminski v. Kaminski*, 12th Dist. Clermont No. CA96-09-073, 1997 WL 89156 (Mar. 3, 1997), where the Twelfth District Court of Appeals held, "It is proper for a court to order a parent to pay private school tuition when the court determines that 1) it is in the best interest of the child to have private schooling; 2) the payor(s) can afford to pay the tuition; 3) the children have been in private schooling; and 4) private schooling would have continued if not for the ending of the marriage." *Id.* at *3. According to Ms. Kezar, the trial court misapplied the fourth *Kaminski* factor.

**{¶30}** This court has not adopted the *Kaminski* factors or instructed trial courts in this district to apply them. In addition, Ms. Kezar cites *Kaminski* out of context. In that case, the parties' minor children attended private high school before the divorce. *Id.* at *1. The decree stated that the children would continue to attend private school through

7

high school unless the parties otherwise agreed and that the cost of the tuition would be split between the parties proportionate to their incomes. *Id.* The husband appealed, and the issue was whether the trial court abused its discretion in deviating from the child support guidelines. *See id.* at *3. The Twelfth District listed the above factors in relation to its consideration of the deviation factor in former R.C. 3113.215(B)(3)(n) [now R.C. 3119.23(L)], involving "[t]he need and capacity of the child for an education and the educational opportunities that would have been available to him had the circumstances requiring a court order for his support not arisen." Essentially, *Kaminski* involved the application of a deviation factor for the purpose of fashioning of an initial child support order. The *Kaminski* factors do not provide an independent legal basis for the allocation of tuition expenses.

{¶31} By contrast, the underlying matter involves Ms. Kezar's post-decree motion to *modify* her child support obligation. "'It has long been recognized in Ohio that a court retains *continuing jurisdiction* over its orders concerning the custody, care, and support of children * * *.'" (Emphasis added.) *In re Adoption of B.I.*, 157 Ohio St.3d 29, 2019-Ohio-2450, 131 N.E.3d 28, ¶ 24, quoting *Singer v. Dickinson*, 63 Ohio St.3d 408, 413, 588 N.E.2d 806 (1992); *see* Civ.R. 75(J) ("continuing jurisdiction" in "divorce, annulment, and legal separation actions"). "'A child affected by such an order is considered a ward of the court, which may always reconsider and modify its rulings when *changed circumstances require it* during the child's minority.'" (Emphasis added.) *In re Adoption of B.I.*, at ¶ 24, quoting *Singer* at 413-414. "In the event of a *substantial change of circumstances*, the court may modify the child-support amount." (Emphasis added.) *Id.*; *see* R.C. 3119.79. Thus, the *Kaminski* factors are not the starting point for considering

8

the modification of child support. Accordingly, Ms. Kezar's reliance on *Kaminski* is misplaced.

{¶32} Ms. Kezar next suggests that the trial court should have allocated 50% of the private school tuition expense to Mr. Kulis pursuant to the parties' shared parenting plan. Ms. Kezar cites *Graham v. Harrison*, 10th Dist. Franklin No. 08AP-1073, 2009-Ohio-4650, for the proposition that a trial court may order a party to pay one-half of a child's private school tuition "despite a prior shared parenting plan which provided that Mother pay 100 percent of the tuition."

{¶33} *Graham* does not stand for this proposition. In that case, the parties negotiated a shared parenting plan that they both signed and that the court file stamped. *Id.* at ¶ 3. Under the plan, the wife agreed to pay 100% of the child's private school tuition. *Id.* at ¶ 18. Days later, however, the wife changed her mind and indicated she would seek sole legal custody of the child. *Id.* at ¶ 3. The trial court held a trial and allocated the parties' parental rights and responsibilities pursuant to a divorce decree, including a requirement that the husband pay 50% of the child's private school tuition. *See id.* at ¶ 3, ¶ 15. The trial court *rejected* the shared parenting plan as not being in the child's best interest pursuant to its statutory authority in R.C. 3109.04(D). *See id.* at ¶ 12.

{¶34} A trial court may modify an *approved* shared parenting plan pursuant to R.C. 3109.04(E)(1) or (2). However, Ms. Kezar did not reference R.C. 3109.04(E) or purport to establish the specific circumstances set forth therein. Rather, at the hearing, Ms. Kezar's counsel indicated that her motion regarding shared parenting and parental rights and responsibilities was resolved by the August 2020 agreed judgment entry. Counsel also confirmed the magistrate's understanding that Ms. Kezar was "not asking for anything separate and apart from the child support [order]."

9

{¶35} Accordingly, the trial court did not err by declining to equally allocate the private school tuition expense for the parties' minor children.

{¶36} The discussed portion of Ms. Kezar's first assignment of error is without merit.

**Motion to Modify Child Support**

{¶37} In her second assignment of error, Ms. Kezar challenges the trial court's denial of her motion to modify child support.

{¶38} Ms. Kezar argues that the trial court erred procedurally by applying the ten percent differential "change of circumstance" test set forth in R.C. 3119.79(A).

{¶39} Pursuant to R.C. 3119.79(A), when a party requests a child support modification, the trial court must recalculate the child support amount under the child support schedule and the applicable worksheet. A recalculated amount that varies more than ten percent from the existing amount "shall be considered by the court as a change of circumstance substantial enough to require a modification of the child support amount." *Id.* Thereafter, the trial court must modify the amount of child support required to be paid under the child support order to comply with the recalculated schedule and worksheet, "unless the court determines that those amounts calculated pursuant to the basic child support schedule and pursuant to the applicable worksheet would be unjust or inappropriate and therefore not in the best interest of the child and enters in the journal the figure, determination, and findings specified in section 3119.22 of the Revised Code." R.C. 3119.79(C).

10

Case No. 2021-L-120

{¶40} According to Ms. Kezar, the trial court should have instead applied R.C. 3119.04, which addresses child support orders for parties with a combined annual income greater than the maximum amount listed on the basic child support schedule.[1]

{¶41} Pursuant to R.C. 3119.04, the trial court is required to "determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents." The trial court must also "compute a basic combined child support obligation that is no less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined annual income equal to the maximum annual income listed on the basic child support schedule established pursuant to section 3119.021 of the Revised Code, unless the court * * * determines that it would be unjust or inappropriate and therefore not in the best interest of the child, obligor, or obligee to order that amount." *Id.*

{¶42} The Eighth District previously adopted Ms. Kezar's position, holding that "when the parties' combined gross income is over [the maximum amount], R.C. 3119.79 is not applicable. * * * Rather, courts should apply the standard set forth in R.C. 3119.04(B)." *Abbey v. Peavy*, 8th Dist. Cuyahoga No. 100893, 2014-Ohio-3921, ¶ 22; *see also MacFarlane v. MacFarlane*, 8th Dist. Cuyahoga No. 93012, 2009-Ohio-6647, ¶ 14-15. More recently, however, the Eighth District has held that "modification of child support orders entered under R.C. 3119.04(B) is governed by the general terms of R.C. 3119.79." *Phelps v. Saffian*, 8th Dist. Cuyahoga No. 103549, 2016-Ohio-5514, ¶ 22. The court enumerated certain considerations to guide courts in determining what constitutes

---

1. Prior to March 28, 2019, the maximum amount was $150,000 per year. *See* former R.C. 3119.04(B). Currently, it is $336,467.04 per year. *See* R.C. 3119.021(B)(1).

11

a substantial change of circumstances sufficient to justify modification of child support when the parents' combined income exceeds the maximum amount. *See id.* at ¶ 18-23; *In re J.C.*, 8th Dist. Cuyahoga Nos. 109745 and 109746, 2021-Ohio-2450, ¶ 16.

{¶43} In *Strimbu v. Strimbu*, 11th Dist. Trumbull No. 2010-T-0104, 2011-Ohio-3629, a panel majority of this court stated, in a footnote, that "[t]he existence (or lack) of a change in circumstances does not obviate the applicability of R.C. 3119.04(B) to support obligations where the parties' combined income is in excess of [the maximum amount]." *Id.* at ¶ 18, fn. 1. Notably, the panel majority relied on *Bettinger v. Bettinger*, 9th Dist. Summit No. 22621, 2005-Ohio-5389, a case in which the trial court found that a substantial change of circumstance had occurred pursuant to R.C. 3119.79(A) before applying the standards in R.C. 3119.04(B). *See id.* at ¶ 11-12.

{¶44} *Strimbu* was not unanimous. According to the dissenting judge, "Ohio courts have held that even when a child-support calculation is made pursuant to R.C. 3119.04(B), the trial court when considering a *modification* must decide whether a change of circumstances has occurred." (Emphasis sic.) *Id.* at ¶ 29 (Cannon, P.J., dissenting). For instance, in *Reik v. Bowden*, 172 Ohio App.3d 12, 2007-Ohio-2533, 872 N.E.2d 1253 (1st Dist.), the First District first applied the ten percent differential test in R.C. 3119.79(A) to determine whether a change of circumstances occurred. *See id.* at ¶ 17-18.

{¶45} Most recently, in *Haun v. Haun*, 11th Dist. Portage No. 2018-P-0108, 2019-Ohio-5408, this court reversed the denial of a motion to modify child support involving high income parents where the trial court failed to first apply "the mandated ten percent increase test in R.C. 3119.79(A)." *Id.* at ¶ 13. We stated that "R.C. 3119.79 governs motions to modify child support. It dictates that a trial court must first recalculate the child support award using the appropriate worksheet and schedule. And if the recalculated

12

amount is more or less than ten percent of the existing support obligation, the court must find a substantial change of circumstances exists that warrants modification of the current support order." *Id.* at ¶ 9. We found additional error in the trial court's failure to consider and apply the standards in R.C. 3119.04(B) in fashioning its child support award. *See id.* at ¶ 18-24.

**{¶46}** Our decision in *Haun* is consistent with the statutory text. The Supreme Court of Ohio has consistently held that the modification of child support requires "a substantial change of circumstances." *In re Adoption of B.I.*, *supra*, at ¶ 24. R.C. 3119.79 expressly governs the *modification* of child support and, specifically, whether there has been a substantial change of circumstance to warrant modification. By contrast, R.C. 3119.04(B) says nothing about the *modification* of a previously issued child support order. Thus, we conclude that a trial court considering a motion to modify child support must first determine whether a substantial change of circumstance has occurred pursuant to R.C. 3119.79. Accordingly, the trial court did not err procedurally in applying the ten percent differential test in R.C. 3119.79(A) despite the parties' high-income status.

**{¶47}** Ms. Kezar's second assignment of error is without merit.

### Deviation Factor

**{¶48}** Within her first assignment of error, Ms. Kezar also contends that the trial court erred in failing to grant a downward deviation in her child support obligation based on her assumption of the children's tuition expense.

**{¶49}** R.C. 3119.22 provides that a court may order a child support order that deviates from the guideline amount if it is found to be unjust or inappropriate and not in the best interest of the children. R.C. 3119.23 provides factors for the court to consider in determining whether to grant a deviation. Courts have held that a court may consider

13

the deviation factors in R.C. 3119.23 when fashioning child support orders in cases involving high income parents. *See*, *e.g.*, *Siebert v. Tavarez*, 8th Dist. Cuyahoga No. 88310, 2007-Ohio-2643, ¶ 45; *Wolfe v. Wolfe*, 10th Dist. Franklin No. 04AP-409, 2005-Ohio-2331, ¶ 11; *Cho v. Cho*, 7th Dist. Mahoning No. 03 MA 73, 2003-Ohio-7111, ¶ 15.

{¶50} Here, the trial court had no reason to consider the deviation factors because it found that there was no substantial change in circumstances to warrant a modification of child support. Although the trial court expressly addressed certain deviation factors in its entry, this discussion was superfluous based on the court's prior determination.

{¶51} The remaining portion of Ms. Kezar's first assignment of error is without merit.

{¶52} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas, Domestic Relations Division, is affirmed.

THOMAS R. WRIGHT, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.

Case No. 2021-L-120